No. 25,231.

UNITED IRON WORKS, *Appellant*, v. L. J. SMITH CONSTRUCTION
COMPANY et al., *Appellees*.

SYLLABUS BY THE COURT.

1. ACTION ON ACCOUNT—*Repairing Steam Shovel—Erroneous Instruction as to
Issue of Damages*. In an action upon an account for the repair of a steam
shovel it is held that an instruction submitting to the jury the issue of
damages to the shovel was erroneous because there was no evidence of the
extent to which its value was impaired, and was material because of the
probability that it affected the amount of the verdict.

2. SAME—*Conduct of Counsel—Evidence*. Rulings relating to the conduct
of counsel and the introduction of evidence are held not to have been ma-
terially erroneous.

3. SAME—*Value of Land—Tax Records as Evidence*. It is held that no oc-
casion existed for the use of the tax records to show the value of land.

Appeal from Crawford district court; DANIEL H. WOOLLEY, judge. Opinion
filed July 5, 1924. Reversed.

*J. J. Campbell, P. E. Nulton*, both of Pittsburg, and *John F. Goshorn*, of
Kansas City, Mo., for the appellant.

*Frank P. Sebree, Henry L. Jost, Sam B. Sebree*, and *Mord M. Bogie*, all
of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

MASON, J.: The United Iron Works sued the L. J. Smith Con-
struction Company for a balance of $2,824.51 alleged to be due for
repairs made to a steam shovel belonging to the defendant. The
amount already paid was $3,557.16, so that the total sum charged
was $6,381.67. A jury returned a verdict for the plaintiff for
$442.84, on which judgment was rendered. The plaintiff appeals.

1. The defendant claimed that the amount charged for the re-
pairs was excessive, particularly because of including a charge for
"fixed expense" or overhead of 160 per cent of the cost of labor
employed on the job; and also that the work was so carelessly
and unskillfully performed that the steam shovel was damaged so
that it was of no value as such. The defendant asked judgment
for the return of what it had already paid, and introduced evi-
dence that $2,000 would have been a good price for the labor done
on the shovel; that a reasonable charge for overhead would be
from 35 to 60 per cent; and that the main base plate had a small

crack which the plaintiff attempted to remedy by welding and
patching, and through want of care and skill made worse, so that
the plate was worth only what it would bring as junk.

The plaintiff complains of an instruction to the effect that if the
allegations of the answer were found true the jury might allow
the defendant "such an amount for such unreasonable charges and
for such incompetent and unskillful work and such damages . to
said shovel" as they should find it entitled to, not exceeding the
sum for which it had asked judgment. The plaintiff urges that
although there was evidence of defective workmanship in the at-
tempted repair of the main base plate such as to make it valuable
only as junk, there was no evidence whatever by which the amount
of the resulting damage could be estimated. The point is well
taken. The defendant undertakes to meet it by saying that dam-
ages were not asked in the answer and were not in issue; that the
defendant merely prayed for the return of the money it had in-
advertently paid, for which it received no value; that the jury
did not award it a recovery, and therefore the instruction com-
plained of is shown not to have affected the verdict. We are un-
able to acquiesce in this view. The jury obviously reached the
amount of their verdict—$442.84—by agreeing upon $4,000 as the
sum that ought to have been charged for the repairs to the shovel,
and deducting from that what had already been paid, $3,557.16.
This meant that the total charge made by the plaintiff had been
reduced by $2,381.67. The entire charge for overhead was $2,236.93,
so that if the jury threw out that item altogether there would still
remain to be accounted for a further deduction of $144.74. It
seems improbable that they intended to allow nothing whatever
for overhead; if such a finding was permissible, for a witness for the
defendant testified that "a reasonable amount to be charged for
overhead . . . on steam-shovel repair job was 35 per cent."
But even if they did, the $144.74 remains to be explained. The
defendant says in its brief, "that could well be accounted for as
labor expended in welding base of shovel, which attempted welding
was a failure and therefore worthless." There is no evidence, how-
ever, of the amount charged for labor expended in this welding
so that the explanation is inadequate. The evidence concerning
the injury done to the main base plate probably led the jury to
make a deduction on that account from what they would otherwise
have allowed, and as there was nothing from which the damage to

the shovel in this respect could be properly estimated, the verdict was without support in the evidence. The materiality of the error is obvious, and there being no way of ascertaining the amount added to the verdict in this way, it cannot be cured by remittitur.

2. Although this ruling requires a reversal, it is necessary to pass upon such of the other questions submitted as may arise at a new trial. Witnesses for the defendant were permitted to testify to the percentage charged for overhead by other machine shops. Complaint of this is made on the ground that the shops and work to which this evidence referred were not sufficiently like those here involved to make the comparison of any use. We think the similarity was sufficient to justify the ruling, especially as some of the evidence went in without objection.

Complaint is also made of counsel for the defendant having been permitted, in conducting the cross-examination of witnesses, to consult documents which counsel for the plaintiff were not permitted to examine. The matter was within the control of the trial court. A further complaint is made of the refusal of the court to allow a letter to be introduced by the plaintiff as a part of a cross-examination of a witness for the defendant. A question had been raised as to its identification, and since the defendant did not seek to introduce it as a part of its own case no prejudice could have resulted.

3. Witnesses for the plaintiff testified that for the purpose of computing depreciation in connection with fixed expense or overhead, its plant (at Pittsburg, Kan.), including realty and personalty, the latter consisting of the stock, was valued at $300,000. The defendant was allowed to introduce evidence that the personal property was assessed at $26,600 and the real property at $37,480. The plaintiff contends it was material error to allow the amount at which real estate was assessed to be shown as tending to prove its actual value. Upon that issue tax returns are received in evidence against the property owner as in the nature of admissions, where they are made by him, but the rule is held to be different where the value stated is fixed by the assessor or other public officer. (22 C. J. 306.) It would seem that the valuation placed upon property by an assessor should be regarded as tending to show its real value, upon the presumption that he had had sufficient experience in that field to entitle his opinion to some weight, and that he performed his statutory duty of assessing all property at its actual value. This is the view of Professor Wigmore (3 Wigmore on Evidence,

§ 1640, p. 411), in support of which, however, only one decision is cited—*Ripton v. Brandon*, 80 Vt. 234. There will not be many cases—and the present is not one—where there is occasion to show the value of realty by the assessment roll, and the attempt may in some situations suggest a purpose to divert attention from the actual issue. The defendant asserts that because a witness for the plaintiff had testified that taxes were included in the overhead expenses the jury were entitled to know the assessed valuation, but the amount paid or charged could have been proved without reference to the assessed valuation. The matter is hardly important enough to require a reversal; but if the jury is expected to find the value of the property, more direct evidence may well be required.

The judgment is reversed and a new trial ordered.