No. 40,489

GAIL ALLEN, *Appellee*, v. HARRY N. BROWN and BERNARD BROWN, d/b/a HARRY BROWN MOTORS, *Appellants*.

(310 P. 2d 923)

Opinion filed May 11, 1957.

*Albert M. Ross*, of Kansas City, argued the cause; *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Thomas E. Joyce*, and *Joseph P. Jenkins*, all of Kansas City, were with him on the briefs for appellants.

*J. W. Mahoney*, of Kansas City, argued the cause; *David W. Carson* and *John K. Dear*, both of Kansas City, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the lower court overruling a demurrer to the petition of the plaintiff.

Throughout this opinion the appellee, Gail Allen, will be referred to as the plaintiff, and Harry N. Brown and Bernard Brown, doing business as Harry Brown Motors, appellants, will be referred to as the defendants.

The plaintiff purchased a new Plymouth automobile from the defendants who were automobile dealers, and after having some difficulty with the automobile brought an action against the dealers and the manufacturer upon an express warranty given in connection with the sale of the automobile.

The appeal before this court does not involve the manufacturer, Chrysler Corporation, and therefore, no reference will be made to the manufacturer with respect to liability pursuant to the warranty.

The pertinent portions of the second amended petition filed by the plaintiff allege:

"That the defendants, Harry N. Brown and Bernard Brown, are an authorized Plymouth dealer, doing business as Harry Brown Motors at 1701 Minnesota Avenue, Kansas City, Kansas. That on January 25, 1955, said defendants warranted to said plaintiff that Plymouth car No. 22190488 was in good order and, relying on said warranty, plaintiff purchased said Plymouth automobile and paid to the defendant, Harry Brown Motors, the sum of $2,476.00, a copy of which warranty is attached and made a part hereof.

"That said Plymouth automobile was not in good order in that said automobile vibrated and shook violently and noisily at all times when driven, causing so much noise that it was impossible to carry on a conversation within said automobile, impossible to listen to the radio installed in said automobile because of said noise and vibration, to the damage of this plaintiff in the sum of $2,476.00. That plaintiff has been further damaged in that he has been deprived of the use of said automobile in taking it into the defendant, Harry Brown Motors, for service and has been without the use of a car due to the time the defendant, Harry Brown Motors, had said car attempting to repair it, to plaintiff's damage in the amount of $500.00. That further plaintiff has been inconvenienced and lost his time, all in and to his damage in the amount of $500.00."

The document containing the warranty attached to the petition reads as follows:

"PLYMOUTH
OWNER
SERVICE CERTIFICATE
No. _____
Issued To
Gail S. Allen
Owner's Name
104 S. 16th
Address
Kansas City, Kansas
City          State
FOR
Plymouth car 22190488
Vehicle Number
1-25-55
Delivery Date
Issued By
Dealer Harry Brown Mtrs.
City Kansas City     State Kansas
KEEP THIS CERTIFICATE IN YOUR CAR AT ALL
TIMES FOR IDENTIFICATION
AUTOMOBILE MANUFACTURES
ASSOCIATION
UNIFORM WARRANTY

" 'The Manufacturer warrants each new motor vehicle manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof, including all equipment or trade accessories (except tires) supplied by the Motor Vehicle Manufacturer, which shall, within ninety (90) days after making delivery of such vehicle to the original purchaser or before such vehicle has been driven four thousand (4,000) miles, whichever event shall first occur, be returned to it with transportation charges prepaid, and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied and of all other obligations or liabilities on its part, and it neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of its vehicles.

" 'This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an authorized Plymouth service station in any way so as, in the judgment of the Manufacturer to affect its stability or reliability, nor which has been subject to misuse, negligence or accident.'

---

"Dealer extends the foregoing warranty to the Purchaser on the Plymouth car sold to Purchaser hereunder in the same manner as if the word 'Dealer' were substituted for the word 'Manufacturer' therein; it being understood that Dealer's obligation under this warranty is limited to making good at its place of business the defective part or parts referred to, within the warranty period, without charge for replacement labor. This warranty by Dealer is expressly in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on the part of Dealer, and the Dealer neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of its vehicles."

Included in the written document attached to the second amended petition, as a part thereof, and incorporated by reference, is the "Plymouth Owner Service Certificate." The portions material to our discussion herein are as follows:

"1. NEW CAR CONDITIONING:

"For your maximum enjoyment and satisfaction, we carefully inspected and conditioned your new Plymouth in accordance with standard procedures before delivery.

. . . . . . . . . . . . .

"4. EXPLANATION OF WARRANTY:

"The Warranty Period is defined as the first 90 days you own your vehicle, or the first 4,000 miles you drive it, whichever event occurs first. (See Warranty on the back of this Certificate.)

"During this period we will not charge for Plymouth replacement parts required because of defective material, or workmanship, or for labor required to install these parts. This Warranty applies to all original parts of the vehicle except tires. This Warranty will not apply:

"1. If parts and/or labor are required due to accident, abuse, or negligence;

"2. If you have your car repaired by other than an authorized Plymouth dealer during the Warranty Period;

"3. If any parts are used that are not made by, sold by, or approved by Chrysler Corporation, Plymouth Division."

The demurrer challenges the petition on the ground that it does not contain facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant automobile dealers. It is unnecessary to unduly burden this opinion with a discussion concerning the liability of the defendant automobile dealers on an implied warranty. In the first place, the written warranty is expressly given in lieu of all other warranties, expressed or implied. This provision is binding on the purchaser. A mere dealer in machinery or equipment of standard make is not bound by any implied warranty and that is particularly true where, as here, the written terms of the contract of purchase expressly excluded any and all implied warranties. (*Harmon v. Coonrod,* 148 Kan. 146, 79 P. 2d 831; *Ehrsam v. Brown,* 76 Kan. 206, 91 Pac. 179; *Richardson v. G. W. Mfg. Co.,* 3 Kan. App. 445, 43 Pac. 809; *Machinery Co. v. Schierkolk,* 95 Kan. 737, 149 Pac. 680; *Thresher Co. v. Nelson,* 105 Kan. 517, 184 Pac. 982; and *Parker v. Hutchinson Motor Car Co.,* 127 Kan. 765, 274 Pac. 1115.)

Furthermore, plaintiff did not plead an implied warranty upon which a cause of action could be lodged against the defendants.

Reference is made to the foregoing authorities cited and to the case of *Topeka Mill & Elevator Co. v. Triplett,* 168 Kan. 428, 213 P. 2d 964, and the authorities cited therein, for a full discussion of the Kansas law relative to Sales and Warranties.

The only question before this court, therefore, is whether the petition states a cause of action against the defendants based upon the express written warranty.

The defendants contend that the second amended petition of the plaintiff must be strictly construed. We do not so regard the petition.

The defendants first attacked the petition of the plaintiff by a motion to make definite and certain. The lower court sustained this motion in all its meritorious respects. It did not require the plaintiff to plead that the automobile purchased was a new automobile, and did not require the plaintiff to itemize the damages which plaintiff claims to have amounted to $2,476.00. In other respects the

plaintiff complied with the order and the petition was again attacked by a motion to strike, which the lower court sustained. It was argued as a motion to make more definite and certain by agreement of the parties, and the plaintiff complied with the order of the court.

The rules concerning the construction of a petition attacked by a demurrer are well stated in the recent case of *Vitt v. McDowell Motors, Inc.*, 180 Kan. 800, 308 P. 2d 115, as follows:

"G. S. 1949, 60-704, provides that a petition must contain a statement of the facts constituting the cause of action in ordinary and concise language, without repetition, and a demand of the relief to which the plaintiff supposes himself entitled. In other words, the function of a petition is to advise defendant precisely what plaintiff claims against him. In the determination whether a petition is sufficient in this respect, we are to be guided by G. S. 1949, 60-736, which provides that in the construction of any pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties. If the allegations of a petition, liberally construed, fail to meet the test of 60-704, the function of a motion to make more definite and certain is to require plaintiff to supply the defect. In the event such motion is successfully resisted by plaintiff, then the petition, if later attacked by demurrer, is to be construed strictly against plaintiff. If the motion is sustained and plaintiff complies, the petition is to be liberally construed. On the other hand, if a petition is sufficient to comply with 60-704, a motion to make it more definite and certain lacks merit, and the rule of strict construction does not apply following the overruling of such motion. The sum and substance, then, of what has been said, is that it is *only* when a *meritorious* motion to make a petition more definite and certain is *overruled* that the rule of strict construction applies when the petition is subsequently attacked by demurrer. (*Cale v. Johnson*, 177 Kan. 576, 578, 579, 280 P. 2d 588.)"

See, also, *Byerley v. Braucher*, 180 Kan. 816, 308 P. 2d 144; *Snyder v. Haas*, 175 Kan. 846, 267 P. 2d 467; Hatcher's Kansas Digest [Rev. Ed.], Pleading, §§ 33 to 35; and West's Kansas Digest, Pleading, § 34 (4).

In the instant case the meritorious portions of defendants' motions were sustained by the lower court and the plaintiff complied with the orders by twice amending his petition. The petition, therefore, is entitled to a liberal construction in favor of the plaintiff.

It was unnecessary to require that the plaintiff make his original petition more definite and certain by stating whether the automobile purchased was new, since a fair construction of the petition including the document incorporated by reference in complying with the court's order warrants a construction that plaintiff's cause of action

is upon the breach of a written warranty involving the sale of a new Plymouth automobile. The attack upon the allegation of damages will be discussed later.

As is often the case in the purchase of a new automobile, the purchaser on discovering mechanical conditions which do not seem to be normal in the operation of the motor vehicle, will return the automobile to the dealer from whom the purchase was made. The particular defect is usually unknown to the purchaser and it is upon the dealer that he relies for discovery of the defect causing the unusual mechanical functioning of the vehicle.

In ordinary and concise language the plaintiff stated facts which describe a new automobile commonly referred to in the automobile industry as a *"vibrator"*. This is neither unusual nor uncommon to the industry. The general cause of the vibrations is known. Some part or parts have been either defectively manufactured or improperly assembled in the construction and manufacture of the automobile. In the operation of an automobile, when these defective parts are rotating rapidly, they are spinning either eccentrically (off center) or concentrically out of balance (improper weight distribution). Both give rise to vibrations. The difficulty lies in locating the precise spot and cause. It may be a defect in the manufacture of the part or parts and it may be a defect in workmanship in the assembly of the automobile. Both are specified and covered by the written warranty.

The purchaser of a new automobile does not know the precise cause, and the dealer with his mechanics may, after calling in the factory experts and representatives, take many months to locate the defect.

Under an express warranty as alleged in the petition, it would place a tremendous burden upon the purchaser of a new motor vehicle to find the precise part or parts of the vehicle which were defective and direct the dealer to replace them or remedy the defect. If the operation of such vehicle is mechanically defective and the automobile is returned to the dealer for the purpose of correcting these defects, it is incumbent upon the dealer to find such defective part or parts and replace them pursuant to the terms of the warranty or to locate the assembly that has been improperly assembled and remedy the defect.

This situation was recognized in a Louisiana case on a "new car guarantee" similar to the warranty in the case at bar, *Cobb v. Truett*, La. App., 11 So. 2d 120, where the court said:

"We experience little difficulty in concluding that the car sold to plaintiff was not in good running order, not serviceable at the time it was purchased, and had such vices and defects as to prevent the normal, safe and comfortable use contemplated by the parties.

". . . It is shown that defendant had every facility for ascertaining the trouble and providing a proper remedy. The car was left in defendant's garage and repair shop six or seven times and, on three of these occasions, remained there two full days, thus affording defendant the opportunity of making proper inspection and repairs, as it had expressly warranted to do . . ."

A similar new car warranty was the subject of litigation between a dealer and the purchaser in *Peterson Co. v. Parrott,* 129 Me. 381, 152 A. 313, where the court held that paint on an automobile not in good condition and not properly applied constituted "defective workmanship or material" within the warranty and the question of damages by reason thereof should have been submitted to a jury.

Where, as in this case, the express warranty contemplates that the seller's liability for a breach of warranty does not attach until he has had an opportunity to remedy the defects, his failure or refusal to act, where such opportunity is afforded the seller, fixes his liability. Under these circumstances the following is quoted from 77 C. J. S., Sales, § 340, p. 1235:

". . . An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty. On the other hand, an offer on the part of the seller to remedy defects not accepted by the buyer releases the seller from liability on the warranty, provided the offer or effort to repair is made within what is, under the circumstances of the particular case, a reasonable time. Where no time is fixed by the contract within which defects should be remedied, they must be remedied within a reasonable time, or an agent of the seller may agree with the purchaser as to the time which shall be given for such purpose. . . ."

While the plaintiff did not allege in so many words that he returned the automobile to the dealers within 90 days or before he had driven 4,000 miles, whichever occurred first, he did allege that it was returned to the dealers for service and attempted repair. The defendants raise no question on this point and no motions were directed against these allegations. Under liberal construction the petition on this point is sufficient to withstand a demurrer. The defendants are advised by the petition what the plaintiff claims against them and may plead their defense. Of necessity, the plain-

tiff's evidence at the trial must establish compliance with the terms of the warranty.

To what extent the plaintiff has been damaged is primarily a question for the jury to determine. The burden of proving damages rests upon the plaintiff. The petition alleged damages to the full extent of the purchase price of the automobile. The plaintiff has further alleged consequential damages resulting from the loss of use of the automobile, inconvenience to himself and time lost. As to the items of damage a petitioner need not plead his evidence.

The law concerning damages where there has been a breach of a warranty in a contract of sale is stated in *McNaghten Loan Co. v. Sandifer*, 137 Kan. 353, 20 P. 2d 523:

"Damages are defined, without any of the many qualifying features thereof, as a just compensation or reparation for a loss or injury sustained. (17 C. J. 716.) . . . If, as stated above, the breach in such cases is to be regarded as a breach of warranty in the sale of chattels, the measure of damages as stated in 55 C. J. 866 is—

" 'Where there has been a breach of a warranty in a contract of sale, the buyer can be compensated in damages. . . . The buyer is entitled to recover the actual damages he has sustained, both general and special, which are the natural and direct or proximate result of the breach, and which may reasonably be regarded as within the contemplation of the parties at the time of the sale as the probable consequence of a breach.' " (p. 358.)

The measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. In the absence of special circumstances showing proximate damage of a greater amount, this is the difference between the value of the goods at the time of delivery and the value they would have had if they had conformed to the warranty. It is thus clear that consequential damages, if properly pleaded and proved, may be recovered by reason of breach of warranty.

It follows that the plaintiff has stated a good cause of action against the defendants for breach of an express warranty, and the order of the lower court overruling the demurrer should be and hereby is affirmed.