No. 42,353

Victor L. Fox, *Appellee,* v. R. D. McKay Motor Co., Inc., a Kansas Corporation, *Appellant.*

(366 P. 2d 297)

Opinion filed November 10, 1961.

*George W. Ball,* of Wichita, argued the cause, *Dale Kidwell, Jack H. Greene* and *Kenneth M. Nohe,* all of Wichita, were with him on the briefs for the appellant.

*Robert A. Thiessen,* of Wichita, argued the cause, *Donald I. Mitchell, Richard W. Holmes* and *Nicholas W. Klein,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the defendant in the lower court from a money judgment in favor of the plaintiff in an action for breach of a written new automobile warranty.

The primary questions presented are whether the amount of the verdict is supported by the evidence, and whether the jury was properly instructed.

On the 5th day of July, 1957, the plaintiff (appellee), Victor L. Fox, purchased a new Chrysler automobile from the R. D. McKay Motor Co., Inc. (defendant-appellant), who was a franchised dealer in Chrysler automobiles in Wichita, Kansas. The purchase order listed the price of the automobile at $4,636. The appellee paid $3,100 and traded in a 1953 Hudson Hornet for which he received a trade-in allowance of $1,536. In addition he paid the sales tax of $62. The new automobile was delivered to the appellee on the 7th day of July, 1957, and an express written warranty (identical in all material respects to the Uniform Written Warranty for New Motor Vehicles set forth in *Allen v. Brown,* 181 Kan. 301, 310 P. 2d 923, at pages 303 and 304 of our official reports) was delivered to the appellee on the 9th day of July, 1957, as a part of the purchase.

It is established by the evidence that the appellee brought the automobile to the appellant's service department with various complaints on numerous occasions during and after the ninety-day pe-

riod specified in the written warranty. Extensive repairs and replacements were made to the new Chrysler automobile by the appellant remedying various defects without cost to the appellee. Before the ninety-day period had expired all of the various defects, concerning which the appellee made complaint, were satisfactorily taken care of by the appellant except one. The automobile still had a rumbling, grating and vibration which was never fully corrected. The appellee testified the rumbling and grating in the underneath part of the automobile caused vibration that was "like you would get on one of those things you step on to rest your feet or what the barber uses on the back of your neck." He further said as early as July, 1957, "The difficulty I had; vibrating and noise and everything, and the front end was getting to where I was afraid to take it on the road." In viewing the evidence most favorable to the appellee this defect in the automobile was never corrected.

The appellee in his petition sought damages in the sum of $4,698 (the price paid for the automobile plus the sales tax). He also sought damages in the sum of $1,500 for the loss of the use of said automobile, and further damages for inconvenience in the sum of $500. There is no evidence in the record to indicate the appellee at any time rendered a return of the automobile to the appellant, other than for the repairs heretofore mentioned. On the contrary the evidence discloses the appellee retained the automobile and at the time of trial had it stored at his home. The action was definitely alleged and tried on the theory of contract—breach of a written warranty.

The jury returned a verdict in the sum of $4,750 upon which the trial court entered judgment. Appeal has been duly perfected from such judgment, and other specified rulings of the trial court, presenting the various questions hereinafter discussed.

The appellant contends there is no substantial evidence to support the jury's verdict as to the amount of damages awarded.

It must be noted the jury returned a verdict in a sum greater than the amount the appellee paid for the automobile, including the sales tax of $62, and he still has the automobile. Only one expert witness was called by the appellee to show the value of the Chrysler automobile which the appellee retained in his possession. This witness, Gene Walton, qualified as an expert on automobile values and said in substance on direct examination that the auto-

mobile had *no retail value.* On cross examination, however, he testified:

"Q. Do you want this jury to understand that your opinion is that a fifty-seven Chrysler Windsor car in driveable condition in the period of between July 9, 1957, and October 7, 1957, had actually no value?

"A. No I wouldn't say it has no value.

"Q. You just wouldn't know how to put a value on it?

"A. Oh, as far as putting a retail value on the car to sell to you or to any buyer that would be awfully hard to do because you just wouldn't buy it.

"Q. You don't know how to place a value on it?

"A. You can place a value on it but you would have to place a value of fifteen hundred or two thousand dollars in order to move any car of that caliber due to the fact that you don't know what is wrong with it. When somebody hears and knows, or hears anything wrong with the car—"

The most that can be said of this testimony as evidence upon which the jury could rely to base a verdict is that it established a minimum value of $1,500 on the automobile delivered. The appellant offered no evidence of value whatever.

In *Allen v. Brown,* supra (a case upon which the appellee relied throughout the trial of this case), the following statement was made as to the measure of damages in a case of this kind:

"The measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. In the absence of special circumstances showing proximate damage of a greater amount, this is the difference between the value of the goods at the time of delivery and the value they would have had if they had conformed to the warranty. It is thus clear that consequential damages, if properly pleaded and proved, may be recovered by reason of breach of warranty." (p. 309.)

The record in the instant case discloses no evidence of consequential damages. Nothing was introduced in evidence to show the value of the use of the automobile. The most that can be said of the evidence is that each time the appellee returned the automobile to the appellant for repairs, it was retained for "a couple of days" to make such repairs, except on one occasion when it was retained for only three or four hours. This is insufficient to prove the actual damages for loss of use. There must be some evidence to show the value of that loss of use.

The appellee contends on this point the appellant is responsible for an invited error, and therefore is in no position to rely upon this failure in the record, citing *Hawkins v. Wilson,* 174 Kan. 602, 605, 257 P. 2d 1110. The appellee attempted to introduce testimony that he had purchased, during the period of time in question, two

additional automobiles for his use. He sought to establish the value of his loss of use by showing the purchase price paid for each of these two additional automobiles. Upon timely objection the trial court *properly* excluded such evidence. This is not a proper method to prove the value of the loss of use of an automobile. In *McCoy v. Fleming,* 153 Kan. 780, 113 P. 2d 1074, the parties by an agreed statement of facts said the cost of renting or hiring another vehicle was $3.50 per day, and the court approved an allowance for the loss of use of an automobile.

The appellee made no attempt to introduce evidence as to special damages because of "inconvenience." (Whether inconvenience is a proper element of damage in a case of this type is treated later in this opinion.) It therefore becomes apparent the jury speculated on these special damages in the absence of any evidence as to the amount of such special damages. Damages for breach of contract are limited to the pecuniary loss sustained. The record discloses no allegation or proof of any tortious act committed in connection with any breach of warranty, and the appellee neither sought nor proved any basis for punitive damages.

In view of the foregoing it was erroneous for the trial court to instruct the jury that if it found the appellee had suffered damage by loss of use of the automobile, because of the appellant's failure to conform to the written new automobile warranty, the jury should award such damage as it found from the evidence the appellee sustained. (*Iron Works v. Construction Co.,* 116 Kan. 482, 227 Pac. 369.) An instruction to the jury as to an item of damage for which there is no supporting evidence is an invitation to the jury to make an award on such item. The jury was entitled to consider that the court must have had some reason for instructing it on that particular item of damage and to conclude therefrom that there must be some evidence which it could consider as to such item. The trial court did not instruct the jury as to any *measure* of damages for the loss of use of the automobile. Thus, it is apparent the jury was permitted to proceed purely on the basis of speculation and conjecture as to this item of damages, and there is no way of ascertaining how much of the total award for damages the jury allowed for it.

By instruction No. 1 the trial court in summarizing the pleadings informed the jury the appellee sought to recover damages for "inconvenience and handicap" in the amount of $500. The appellant

contends the trial court erred in failing to give its requested instruction No. 8, which in substance was that the jury could not award any damages to the appellee for inconvenience suffered by him in connection with the use of the 1957 Chrysler Windsor automobile purchased by him from the appellant.

Inconvenience in an action for breach of contract, separate and apart from loss of use, is not a proper basis upon which to recover damages. The parties have cited no Kansas cases on this point, and our research has disclosed none. But in *Cannon v. Pulliam Motor Co. et al.*, 230 S. C. 131, 94 S. E. 2d 397, the Supreme Court of South Carolina, in an appeal from an action on a new automobile warranty, said:

"The Court further erred in charging the jury that they could take into consideration inconvenience as an element of damages. No case has been cited and we find none sustaining such an instruction in a case of this kind." (p. 139.)

It is difficult to conceive of any situation where inconvenience, apart from loss of use, could result in any pecuniary loss to the appellee. On the record here presented there is in fact no evidence of such loss.

The jury should have been instructed on this point because it could well have concluded from the trial court's instructions as a whole that it could award damages to the appellee for mere inconvenience as distinguished from loss of use.

The appellant contends the trial court erred by instructing the jury that the burden was upon the appellant to prove its allegation that the condition of the automobile and the alleged adjustments made thereon complied with the warranty.

It must be conceded the burden of proof is upon the party relying upon a breach of warranty to show the warranty, the breach thereof, and that his loss resulted from the breach of such warranty. The duty of the appellant under the contract extended no further than to comply with its terms. (*Anderson v. Thomas*, 184 Kan. 240, 336 P. 2d 821; *Harvester Co. v. Erne*, 63 Kan. 858, 66 Pac. 1004; 77 C. J. S., Sales, § 365, pp. 1283, 1284; and 46 Am. Jur., Sales, § 309, p. 490.)

Applying the rules set forth in *Allen v. Brown*, supra, to which we adhere, the written warranty in the instant case was expressly given in lieu of all other warranties, express or implied. It is therefore clear that no breach of the written warranty could occur until

the appellee had first established: (*a*) that the automobile was found to be defective; (*b*) that it was then returned to the dealer to give it an opportunity to remedy the defects, and (*c*) that the dealer failed or refused to remedy the defects. The burden of proof in the first instance was upon the appellee to prove a breach of this written warranty and the burden on this issue did not shift to the appellant. For this reason the appellant charges the instruction given by the trial court was erroneous. This point is not well taken.

Attention is invited to the language used in *Allen v. Brown,* supra, where the court said:

". . . The particular defect is usually unknown to the purchaser and it is upon the dealer that he relies for discovery of the defect causing the unusual mechanical functioning of the vehicle.

.   .   .   .   .   .   .   .   .   .   .

"Under an express warranty as alleged in the petition, it would place a tremendous burden upon the purchaser of a new motor vehicle to find the precise part or parts of the vehicle which were defective and direct the dealer to replace them or remedy the defect. If the operation of such vehicle is mechanically defective and the automobile is returned to the dealer for the purpose of correcting these defects, it is incumbent upon the dealer to find such defective part or parts and replace them pursuant to the terms of the warranty or to locate the assembly that has been improperly assembled and remedy the defect." (p. 307.)

By instruction No. 6 the jury was instructed as follows:

"When the purchaser of a new automobile returns the automobile to the dealer for the purpose of correcting defects covered by a written new car warranty, it is incumbent upon the dealer to find such defective part or parts and replace them or to locate the assembly that has been improperly assembled and remedy the defect pursuant to the terms of the warranty.

"The dealer's failure or refusal to remedy the defects under a new car warranty, where an opportunity is afforded to remedy such defects, fixes the liability of the dealer for breach of warranty.

"The measure of damages for breach of warranty is the loss directly and naturally resulting from the breach of warranty. In the absence of evidence showing a greater amount of damages, the measure of damages is the difference between the value of the automobile involved at the time of delivery and the value it would have had if it had conformed to the warranty."

This instruction given by the trial court is consistent with the language used in *Allen v. Brown,* supra. Here the appellant dealer in its answer relied upon the affirmative defense that it had complied with the terms of the warranty.

By other appropriate instructions the trial court fully informed the jury as to the pleadings in the case, the claims of the respec-

tive parties, and that the burden of proof was upon the plaintiff (appellee) to prove the case by a preponderance or greater weight of the evidence.

Upon the record presented in the instant case the appellee's evidence showed that the new Chrysler automobile which he purchased was defective upon delivery, and the various defects were enumerated. It was not incumbent upon the appellee to show the precise nature of the defects which did exist upon delivery of the automobile. Language used in *Miller v. Kruggel*, 165 Kan. 435, 195 P. 2d 597, is appropriate on this point. There the court said:

"It has sometimes been said that when a party to an action has made a prima facie case, the 'burden of proceeding' or the 'burden of evidence' then shifts to his adversary. This is simply a way of saying that upon a prima facie case, a litigant is entitled to prevail if his adversary offers no evidence. The necessity of offering evidence to offset an adversary's prima facie case in no way shifts the burden of proof, which continues to rest upon the party which has it. . . ." (p. 439.)

Instruction No. 6 of which the appellant complains does no more than place upon the appellant the burden of proving its affirmative defense, or of moving forward with its evidence to overcome, if possible, the prima facie case made by the appellee, depending upon the interpretation placed upon the appellant's answer.

The appellant contends the measure of damage concerning which the jury was instructed in the last paragraph of instruction No. 6 was erroneous because it failed to take into account the defects which the appellant repaired without cost to the appellee.

Technically, this may be correct if such paragraph is isolated, but it must be read together with the other instructions given by the trial court. By instruction No. 7 the jury was told that if it found the automobile involved did not measure up to the written new automobile warranty in evidence at the time it was delivered to the appellee, after the appellant had a reasonable opportunity to remedy the defects or malfunctions, if any, then the appellant would be liable to the appellee for whatever damage the appellee had suffered *as a result of its failure to comply with the warranty,* and that it was the duty of the jury to award the appellee *whatever damages they found from all the evidence* the appellee had suffered thereby. Further appropriate instructions were given, and special questions were submitted to the jury. It is apparent from the answer to special questions that the jury was not mislead by instruction No. 6. After finding that the automobile in question

was defective or improperly assembled at the time of delivery, and that such defects were not properly repaired, assembled or replaced free of cost to the appellee, the jury was specifically asked in the second question what defects the appellant had failed to remedy. The jury answered:

"Whatever part or parts which caused the defects evident when the car was delivered to the plaintiff from the defendant. Many parts have been replaced free of cost, however all the original defects have not been eliminated."

While the appellant does complain of this answer given by the jury, the record does not disclose that the appellant made a request to have the jury give a more specific answer before it was discharged and the verdict accepted.

In *Allen v. Brown,* supra, the court was confronted with an appeal from an order overruling a demurrer to a petition, and the language quoted in instruction No. 6 declared in general terms a measure of damages for this type of case. In that case no evidence was before the court to consider. Generally speaking, the rule there stated is correct. (See, *Wheeler & Wilson Mfg. Co. v. Thompson,* 33 Kan. 491, 6 Pac. 902.) In the instant case numerous defects which existed at the time the new automobile in question was delivered to the appellee were remedied within the warranty period, but one principal defect remained. While it is possible the remaining defect in the automobile could be of such magnitude that the subsequent repair of other defects would not alter its value in the condition it was as of the date of delivery, it is also possible the value could be greater after certain defects had been remedied. On the facts in this case the rule would require some modification.

While the hypothetical question put to Gene Walton (the only value witness on the automobile at the trial) was possibly subject to objection for the same reason, in that it did not take into consideration those defects which had been corrected free of charge to the appellee after delivery of the new automobile, the appellant, having been met with an adverse ruling by the trial court, was obligated to pursue the point on cross examination to establish his theory of the case; that is, whether the value of the new automobile in its condition at the time of delivery would be appreciably affected by the subsequent correction of some of the defects, and how much.

From the record presented in this case it is apparent the jury added to its verdict damages for the loss of use of the new Chrysler automobile in question and/or damages for inconvenience, which

were without support in the evidence. There being no way to ascertain the amount added to the verdict for these items the materiality of the error is obvious, and the verdict cannot be cured by remittitur. (*Iron Works v. Construction Co.,* supra, at p. 484.)

Touching upon the subject of remittitur in *Live Stock Co. v. Guthrie,* 50 Kan. 476, 31 Pac. 1073, it was said:

". . . This court cannot, of course, retry the facts, nor can it determine the merits of the controversy, except to inquire whether the evidence sustains the findings and judgment of the trial court. Where special findings are made which are found to be supported by the evidence, judgment may be given upon them, although contrary to the general and some of the special findings. If there was error in the admission of testimony or in the charge of the court which enters into all of the findings, a complete reversal is required. Ordinarily, in cases where there is a general finding and judgment, and material error is found, there must be a reversal and a new trial. . . ." (p. 477.)

We conclude upon the basis of the record here presented the appellant's motion for a new trial should have been sustained. The judgment of the lower court is therefore reversed with directions to grant a new trial.