HAROLD PAGE STUTTS v. GREEN FORD, INC., FORD MOTOR CO., FORD MOTOR CREDIT CO.

No. 7919SC567

(Filed 15 July 1980)

1. **Uniform Commercial Code § 25-- oil leak in truck – breach of warranty – repairs by other than selling dealer – directed verdicts for dealer and manufacturer improper**

Directed verdicts in favor of the seller and manufacturer of a truck were erroneously granted on plaintiff's breach of warranty claim where defendant manufacturer and defendant seller jointly warranted that the seller would repair or replace without charge for parts and labor "any part [found to be defective in factory material or workmanship] during the first 12 months or 12,000 miles of operation"; at the end of the warranty period, plaintiff's truck continued to leak oil despite numerous attempts by two dealers to discover the cause and correct it; the burden was not upon plaintiff, a layman, to identify any specific defective part or workmanship which caused the oil leak in order to recover on his claim; there was evidence from

Stutts v. Green Ford, Inc.

which the jury could infer that defendant seller either refused to perform further repairs on plaintiff's truck or that it failed to make proper repair of defective parts on the truck within a reasonable time, thereby causing plaintiff to seek repairs from another dealer; and plaintiff's refusal to return the vehicle to the selling dealer for further repairs would not preclude him from recovery.

2. **Uniform Commercial Code § 11– limited warranty – duty of warrantor to correct defect**

   Although limited warranties are valid, compliance with their covenants to repair and to replace defective parts requires that the warrantor do more than make good faith attempts to repair defects when requested to do so, and a manufacturer or other warrantor may be liable for breach of warranty when it repeatedly fails within a reasonable time to correct a defect as promised; moreover, a party seeking to recover for breach of a limited warranty is not required to give the warrantor unlimited opportunities to attempt to bring the item into compliance with the warranty.

3. **Uniform Commercial Code § 26– truck – breach of warranty – measure of damages – no recovery for loss of use**

   Where a defect in a truck was not or could not be repaired within a reasonable period as required by a warranty limiting the remedy available to the purchaser in the event of a breach to repair or replacement of parts, the limited, exclusive remedy "fails of its essential purpose" within the meaning of G.S. 25-2-719(2), and the purchaser is entitled to recover damages as otherwise provided in the Uniform Commercial Code. The appropriate measure of damages in the case would be the difference in the fair market value of the truck in its condition at the time and place of acceptance, increased by the value of repairs and replacements made in compliance with the warranty, and its fair market value had it been as warranted; furthermore, plaintiff would not be entitled to damages for time lost in his business due to his inability to use the truck while it was being repaired, since the warranty provided that loss of use of the vehicle, loss of time, and inconvenience were not covered, and such contractual limitation was valid. G.S. 25-2-714.

4. **Rules of Civil Procedure § 50.2– directed verdict for party with burden of proof**

   A trial judge may not direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses, but there are instances in which credibility may be established as a matter of law, as where the non-movant admits the truth of the facts upon which movant's claim rests, where the controlling evidence is documentary and the non–movant does not deny the authenticity of or correctness of the document, or where there are only latent doubts as to the credibility of oral testimony.

5. **Uniform Commercial Code § 45– default under retail sales contract – number of payments made in dispute – directed verdict improper**

   In an action to recover damages allegedly resulting from breach of

Stutts v. Green Ford, Inc.

warranty where one defendant counterclaimed for an amount which represented the unpaid balance allegedly due on the retail installment contract executed by plaintiff, the trial court erred in directing verdict for defendant, though defendant's principal evidence was documentary, since that evidence was directly contradicted by plaintiff's testimony that he paid seven monthly installments during a given period rather than six as shown by defendant.

APPEAL by plaintiff from *Walker, Judge.* Judgment signed 6 October 1978 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 17 January 1980.

Plaintiff filed this civil action against defendants Green Ford, Inc. Ford Motor Company, and Ford Motor Credit Company, seeking to recover damages allegedly resulting from breach of warranty and negligence.

On 2 April 1976 plaintiff purchased a 1976 Model F 600 Ford Truck from Green Ford, Inc., paying the sum of $5,073.02 in cash and financing the unpaid balance of $6,500.00 through Ford Motor Credit Company. Under the terms of a Retail Installment Contract signed by plaintiff, plaintiff agreed to make 48 monthly payments of $178.64 beginning 11 May 1976. In connection with the purchase of the truck, plaintiff was issued the following express limited warranty:

Ford and the Selling Dealer jointly warrant for each 1976 model medium and heavier truck sold by Ford that for the following periods from first use or retail delivery, whichever is earliest, the Selling Dealer will repair or replace any of the following parts that are found to be defective in factory material or workmanship under normal use in the United States or Canada on the following basis:

Any part during the first 12 months or 12,000 miles of operation, whichever is earliest (except tire and diesel engines manufactured by others than Ford, which are separately warranted by their manufacturers), without charge for parts and labor.

Any part of the engine block, head and all internal engine parts, water pump, intake and exhaust man-

ifolds, flywheel and flywheel housing, clutch housing (excludes manual clutch assembly and clutch release bearing), transmission case and all internal transmission parts (includes auxiliary transmission), transfer case and all internal parts, drive shaft and drive shaft support bearings, universal joints, drive axle housing and all internal parts (excludes drive wheel bearings) and drive axle shafts, after 12,000 miles and during the first 12 months or 50,000 miles of operation, whichever is earliest; for charge of 50 percent of the Dealer's regular warranty charge to Ford for parts and labor. (Defective gaskets and seals are covered for the same warranty period as that of the part with which they mate.)

.    .    .    .    .    .    .    .    .

All Ford and the Selling Dealer require is that you properly operate, maintain and care for your vechicle, and that you return for warranty service to your Selling Dealer's place of business or to any authorized Ford Dealer if you are traveling, have moved a long distance or need emergency repairs. Waranty repairs will be made with Ford Authorized Service or Remanufactured Parts.

To the extent allowed by law, THIS WARRANTY IS IN PLACE OF all other warranties, express or implied, including ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS. Under this warranty, repair or replacement of parts is the only remedy.

.    .    .    .    .    .    .    .    .

Under this warranty, repair or replacement of parts is the only remedy, and loss of use of the vehicle, loss of time, inconvenience, commercial loss or consequential damages are not covered.

In his complaint filed 16 February 1977 plaintiff pled the limited warranty and the existence of numerous specified defects in workmanship and materials. He alleged that on several

occasions he had returned the vehicle to defendant Green Ford, Inc. for repairs, but that Green Ford had negligently failed to repair or refused to repair the defects in workmanship and materials as required by the warranty and that, as a result of such breach, he had suffered damages in the amount of $15,000.00, including time lost in his business due to his inability to use the truck while it was being repaired. Plaintiff prayed that he recover $15,000.00 damages against Ford Motor Company and Green Ford, Inc., and he prayed for a temporary restraining order restraining defendant Ford Motor Credit Company from taking possession of the truck pending final determination of the issues in this case.

Defendant Green Ford, Inc. admitted the sale of the Ford truck to plaintiff in April 1976 and the validity of the warranty, and denied that the warranty had been breached. Defendant Ford Motor Company denied the warranty and, in the alternative, alleged that if it had issued a warranty, its warranty obligations had been fully met. Ford Motor Credit Company and Green Ford, Inc. both admitted the execution of the written Retail Installment Contract and that the unpaid balance on the sales price of the vehicle at the time of sale amounted to $6,500.00. Additionally, Ford Motor Credit Company, by amendment to its answer, alleged that plaintiff had breached the Retail Installment Contract, which had been assigned to Ford Motor Credit Company by Green Ford, Inc. Based on its election to accelerate the debt owing due to plaintiff's breach, Ford Motor Credit Company prayed recovery of $7,486.08 allegedly due under the contract and repossession of the subject property. By way of reply, plaintiff denied that the unpaid balance was due because of defendant Green Ford Inc.'s and Ford Motor Company's breach of warranty.

The case came on for hearing before Judge Hal H. Walker and a jury at the 2 October 1978 civil session of Superior Court in Randolph County. At the close of plaintiff's evidence, all three defendants moved for a directed verdict on plaintiff's claim. The motion was granted as to defendants Ford Motor Company and Ford Motor Credit Company, but denied as to defendant Green Ford, Inc. At the close of all of the evidence, defendant Green Ford, Inc. renewed its motion for a directed

verdict, which was granted. At the same time, defendant Ford Motor Credit Company moved for a directed verdict on its counterclaim for the amount due under the Retail Installment Contract. The trial court granted that motion and entered judgment in favor of Ford Motor Credit Company against plaintiff in the amount of $7,190.84 with interest. From judgment that plaintiff recover nothing of the defendants and that Ford Motor Credit Company recover $7,190.84 of plaintiff, plaintiff appealed.

*Ottway Burton for plaintiff appellant.*

*Coggin, Hoyle & Workman, by James W. Workman, Jr. for defendant appellee Green Ford, Inc.*

*Luke Wright for defendant appellees Ford Motor Company and Ford Motor Credit Company.*

PARKER, Judge.

## DIRECTED VERDICT ON PLAINTIFF'S CLAIM OF BREACH OF WARRANTY

[1] Motions for directed verdicts were granted in favor of defendant Ford Motor Company at the close of plaintiff's evidence and in favor of defendant Green Ford, Inc. at the close of all of the evidence. The question presented, then, is whether the evidence, viewed in the light most favorable to plaintiff, the nonmovant, so clearly shows the absence of any breach of warranty that it will support no other conclusion as a matter of law. *See, Rose v. Motor Sales*, 288 N.C. 53, 215 S.E. 2d 573 (1975). The evidence, taken as true and interpreted in the light most favorable to the plaintiff, shows the following:

Plaintiff selected a 1976 F600 Ford truck with a heavy duty engine from Green Ford, Inc. in Greensboro for use in his business of transporting furniture to the northeastern United States for sale. In order to adapt the truck to his business, plaintiff ordered a special 25-foot van to be built and installed on the rear of the truck by a body shop in High Point.

On 2 April 1976 plaintiff took delivery of the truck from Green Ford. That same day he discovered wiring problems in the truck affecting the lights and windshield wipers and returned the vehicle to Green Ford for repairs. After the truck was returned to plaintiff ten to twelve days later, he had the van installed on the rear of the truck. In late April 1976 plaintiff began experiencing problems with loud noise and jerking in the transmission when the truck was in low gear, jerking and noise in the speedometer, and steering difficulty which caused the truck to pull to the left. Plaintiff informed Green Ford of these problems, whereupon Green Ford's mechanics replaced several parts in the power steering and the speedometer.

In May 1976 plaintiff continued to experience problems steering the truck, and he noticed oil leakage at the front and the rear. Water overflowed from the engine when it was stationary, and the gears were difficult to shift. Plaintiff also found that the truck lost power when loaded and travelling uphill. All of these problems were brought to the attention of Green Ford on a number of occasions, and the vechicle was in the shop for repairs for a week and a half during that month.

During June and July 1976 the problems with oil leakage, water overflow, speedometer noise, pull in the steering, and difficulty in shifting gears and loss of engine power persisted. In June the truck was in the shop for a week, and in July for two weeks. Although Green Ford did replace a part which was causing the water overflow, the other problems were not fixed.

In August 1976 plaintiff returned from a trip north and again returned the truck to Green Ford for repair of the oil leak, gear shift, and power loss.

During October, gas began leaking from the carburetor, and the oil leak grew worse. Green Ford again attempted repairs on the vehicle. When plaintiff went to pick it up on 25 October 1976 and discovered that the gas leak in the carburetor had not been corrected, plaintiff told Mr. Green, the owner of the dealership, and the service manager that "[he] couldn't imagine someone doing work like that." To this Mr. Green re-

plied, "Why don't you take the truck somewhere else?" At that time the truck had approximately 8,999 miles on it and was still under warranty.

On the same day that Mr. Green had asked him why he didn't take the truck somewhere else, plaintiff took the truck to Piedmont Ford Truck Corporation and asked the service manager if Piedmont would begin to perform repairs on the truck under the warranty. The service manager and assistant service manager of Piedmont Ford agreed, and on 27 October 1976 Piedmont began repairs on the carburetor to stop the gas leak, on the speedometer to stop the jerking, and also attempted to repair a vacuum leak. In November 1976 plaintiff asked Ford representatives to replace the engine or to accept return of the truck and to refund his investment, but they refused to do so. After another trip in December, plaintiff again returned the truck to Piedmont Ford complaining still of loss of power, oil leakage, speedometer noise, vacuum leak and the same power steering problem that Green Ford had failed to repair properly. At that time, Piedmont mechanics, along with Ford factory representatives, discovered that the engine was building pressure in the crank case, contributing to the oil leak, but they were unable to discover the cause. The vacuum leak and the power steering were repaired.

At the time the warranty coverage on all parts ended in approximately February or March 1977, the truck was still leaking oil and losing power going up inclines. Plaintiff's own mechanic testified that the van body which plaintiff had installed would reduce the engine performance and cause the loss of power due to wind resistance.

We find the foregoing evidence sufficient to withstand the motions of Green Ford, Inc. and Ford Motor Company for directed verdicts, and accordingly find error in the granting of such motions.

The validity of the written warranty given by "Ford and the Selling Dealer" in connection with the sale of the truck to plaintiff is governed by the provisions of Article 2 of the Uniform Commercial Code, codified in Chapter 25 of the General

Statutes. Under the terms of the warranty, the obligation of the manufacturer and the dealer during the first 12 months or 12,000 miles of operation is limited to repair or replacement of any part (except tires and diesel engines not manufactured by Ford) that is "found to be defective in factory material or workmanship under normal use." It expressly states that it is in place of all other warranties, express or implied, including any implied warranty of merchantability or fitness. Insofar as the warranty is limited in coverage and disclaims all implied warranties, it is valid under the provisions of G.S. 25-2-316.

Where an aggrieved party seeks to recover damages for breach of an express warranty, limited or otherwise, he must demonstrate both that he has fulfilled his own obligations under it and that he has taken the steps required by Article 2. G.S. 25-2-607(3)(a) requires that a buyer, within reasonable time after he discovers or should have discovered any breach, notify the seller or be barred from any remedy. Where suit is brought to recover damages allegedly suffered as the result of breach of warranty, "[t]he burden is on the buyer to establish any breach with respect to the good accepted." G.S. 25-2-607(4). Arguing within this statutory framework, defendant Green Ford contends that plaintiff has failed to meet his burden of showing that Green Ford failed to repair and replace parts found to be defective as required by the warranty and, further, that plaintiff's refusal to permit Green Ford to perform any further work on the truck after 26 October 1976 relieved it of any liability under the warranty. Likewise, defendant Ford Motor Company contends that its warranty obligation was satisfied when either Green Ford or Piedmont Ford Truck Sales replaced defective parts called to their attention. We disagree.

[2] Although limited warranties are valid, compliance with their covenants to repair and to replace defective parts requires that the warrantor do more than make good faith attempts to repair defects when requested to do so. A manufacturer or other warrantor may be liable for breach of warranty when it repeatedly fails within a reasonable time to correct a defect as promised. *Allen v. Brown*, 181 Kan. 301, 310 P. 2d 923 (1957); *Cannon v. Pulliam Motor Company*, 230 S.C. 131, 94 S.E. 2d 397 (1956); *Givan v. Mack Truck, Inc.*, 569 S.W. 2d 243 (Mo. Ct.

App. 1978). A party seeking to recover for breach of a limited warranty is not required to give the warrantor unlimited opportunities to attempt to bring the item into compliance with the warranty. *Cannon v. Pulliam Motor Co., supra; see generally,* 77 C.J.S. Sales §340–341, pp. 1235,1236.

[1] Application of these principles to the facts shown by the evidence favorable to the plaintiff in the present case discloses that neither defendant Green Ford, Inc. nor Ford Motor Company was entitled to a directed verdict on plaintiff's breach of warranty claim. Ford Motor Company and the Selling Dealer, Green Ford, Inc., jointly warranted that the Selling Dealer would repair or replace without charge for parts and labor "[a]ny part [found to be defective in factory material or workmanship] during the first 12 months or 12,000 miles of operation, whichever is earliest (except tire and diesel engines manufactured by other than Ford . . . )" At the end of the warranty period, in February or March 1977, plaintiff's truck continued to leak oil despite numerous attempts by both Green Ford and Piedmont Ford to discover the cause and to correct it. It is true that plaintiff was unable to identify any specific defective part or workmanship which caused the oil leak; however, we are reluctant to place the undue burden upon a purchaser such as plaintiff, a layman, of doing so in order to recover on his claim. This view was adopted by the Supreme Court of Kansas in *Allen v. Brown, supra,* in which the court reasoned:

> As is often the case in the purchase of a new automobile, the purchaser on discovering mechanical conditions which do not seem to be normal in the operation of the motor vehicle, will return the automobile to the dealer from whom the purchase was made. The particular defect is usually unknown to the purchaser and it is upon the dealer that he relies for discovery of the defect causing the unusual mechanical functioning of the vehicle.
>
> \*   \*   \*
>
> Under an express warranty as alleged in the petition, it would place a tremendous burden upon the purchaser of a new motor vehicle to find the precise part or parts of the

Stutts v. Green Ford, Inc.

vehicle which were defective and direct the dealer to re-
place them or remedy the defect. If the operation of such
vehicle is mechanically defective and the automobile is
returned to the dealer for the purpose of correcting these
defects, it is incumbent upon the dealer to find such defec-
tive part or parts and replace them pursuant to the terms of
the warranty . . . .

181 Kan. at 307, 310 P. 2d at 927–928. *Accord, Rice v. Chrysler
Motors Corporation,* 198 N.W. 2d 247 (N.D. 1972).

The testimony of plaintiff and his witnesses concerning the
persistent oil leak is sufficient to permit the inference that
some defect in the truck was the cause, even though the precise
cause has eluded discovery by Ford mechanics. As to plaintiff's
complaint of loss of power on going up inclines, however, his
own mechanic testified that the apparent cause of such loss of
power was the van installed on the rear of the truck which
increased wind resistance and placed a greater strain on the
engine. Unlike the evidence concerning the oil leak, none of
plaintiff's evidence would support an inference that this was
the result of a defect covered by the warranty.

Also, there is sufficient evidence presented in the record
from which the jury could infer that Green Ford, Inc. either
refused to perform further repairs on plaintiff's truck, or that it
failed to make proper repair of defective parts on the truck
within a reasonable time, thereby causing plaintiff to seek re-
pairs from another Ford dealer. In either event, both defen-
dants' liability for breach would attach, and the plaintiff's re-
fusal to return the vehicle to the selling dealer for further
repairs would not preclude him from recovery. *See, Cannon v.
Pulliam Motor Company, supra.* The facts of this case distin-
guish it from those presented in *Lilley v. Motor Co.,* 262 N.C. 468,
137 S.E. 2d 847 (1964), upon which defendants rely. In *Lilley,* our
Supreme Court held that, in the absence of evidence that re-
pairs or replacements made by the selling dealer were unsatis-
factory, plaintiff's refusal to permit the selling dealer to comply
further with the warranty was fatal to his action. In the pres-
ent case, such evidence is present.

Because the directed verdicts in favor of the selling dealer and the manufacturer were erroneously granted on plaintiff's breach of warranty claim, the case must be remanded for a new trial. For the guidance of the trial court, we discuss the measure of damages to which plaintiff would be entitled in the event that a breach of warranty by Green Ford and Ford Motor Company is found. The written warranty expressly limits the remedy available to the purchaser in the event of breach to repair or replacement of parts. Such a contractual limitation of remedy is permitted by G.S. 25-2-719 which provides as follows:

(1) Subject to the provisions of subsections (2) and (3) of this section . . . .

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies ... to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Although the statute declares such limitations valid, subsection (2) specifies that the contractual limitation will not apply "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose." As the Official Comment to G.S. 25-2-719 makes clear, "it is of the very essence of a sales con-

tract that at least minimum adequate remedies be available."
Where, as in the present case, there is a defect which is not or
cannot be repaired within a reasonable period as required by
the warranty, courts in other jurisdictions have concluded that
the limited, exclusive remedy "fails of its essential purpose"
within the meaning of § 2-719(2) of the Uniform Commercial
Code and have permitted the buyer to recover damages as
otherwise provided by the Code. *See, Givan v. Mack Truck, Inc.,*
*supra;* 67 Am. Jur. 2d Sales § 534, pp. 718-719 and cases cited
therein.

[3] The general measure of damages for breach of warranty
allowed by the Uniform Commercial Code under G.S. 25-2-714
is "the difference at the time and place of acceptance between
the value of the goods accepted and the value they would have
had if they had been as warranted, *unless special circumstances*
*show proximate damages of a different amount.*" (emphasis
added). The burden of proving the difference in value, of course,
rests upon the purchaser. To the extent that plaintiff in the
present case "accepted" the truck by continued use in spite of
its "nonconformity", *see* G.S. 25-2-606, the date of acceptance
preceded the time when numerous repairs were made in full
compliance with the warranty. At the end of the warranty
period, the only nonconformity of which plaintiff complains and
of which there is evidence of defective parts or workmanship is
the oil leakage. Under the special facts of this case, we hold,
then, that an appropriate measure of damages would be the
difference in the fair market value of the truck in its condition
at the time and place of acceptance, increased by the value of
repairs and replacements made in compliance with the warran-
ty, and its fair market value had it been as warranted. *See, Trans-*
*portation, Inc. v. Strick Corp,* 283 N.C. 423, 196 S.E. 2d 711 (1973).
This, in effect, would permit plaintiff to recover damages com-
pensating him for the loss in value due to the persistent oil
problem, while preventing him from receiving windfall dam-
ages for defects which were subsequently successfully re-
paired.

As to the recovery of incidental and consequential damages
for breach of warranty, recovery of these is generally permitted
by G.S. 25-2-714. G.S. 25-2-719, however, expressly permits

contractual limitation of such damages unless the limitation or exclusion is unconscionable. The warranty in the present case contains such a limitation: "Under this warranty, repair or replacement of parts is the only remedy, and loss of use of the vehicle, loss of time, inconvenience, commercial loss or consequential damages are not covered." Although we have held that the limitation of remedy to repair and replacement of parts here fails of its essential purpose, we do not deem the failure of that one remedy to invalidate the contractual limitation on the recovery of consequential damages. We hold, therefore, that the contractual limitation on damages of this kind would be effective to limit plaintiff's recovery in the event breach of warranty is found to the difference in fair market value as stated above. *See Cox Motor Car Company v. Castle*, 402 S.W. 2d 429 (Ky. 1966).

## DIRECTED VERDICT ON DEFENDANT FORD MOTOR CREDIT COMPANY'S COUNTERCLAIM

In its counterclaim filed as an amended answer, Ford Motor Credit Company sought judgment against plaintiff in the amount of $7,486.08, representing the unpaid balance allegedly due on the Retail Installment Contract executed by plaintiff. At trial Louis Hubbard, branch manager of defendant's Greensboro office, testified that the credit company had purchased the installment contract from Green Ford on 6 April 1976 for $6,500.00, the amount financed under the terms of the contract. Mr. Hubbard stated that between May and October 1976, plaintiff made six monthly payments of $178.24, or a total of $1069.44. The last payment made was on 13 October 1976. In accordance with the terms of the contract on default, Ford Motor Credit Company accelerated the debt, leaving the amount of $7,486.08 due and payable under the contract. Taking into account the rebate of the unearned portion of the interest charge, defendant's witness testified that the "payoff" to which Ford Motor Credit Company was entitled was $7,190.80. After granting Ford Motor Credit Company's motion for a directed verdict, the trial court entered judgment in the company's favor in the amount of $7,190.80.

[4]  The question raised by this portion of the appeal is whether a verdict was properly directed for the party with the burden of proof. Our Supreme Court has held that a trial judge may not direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses. *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). The court has more recently recognized that there are rare instances in which credibility may be established as a matter of law, as where the non-movant admits the truth of the facts upon which movant's claim rests, where the controlling evidence is documentary and the non-movant does not deny the authenticity of or correctness of the document, or where there are only latent doubts as to the credibility of oral testimony. *Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979).

[5]  The present case does not fall within one of those rare exceptions. Although Ford Motor Credit Company's principal evidence was documentary, that evidence was directly contradicted by plaintiff's testimony that he paid seven monthly installments between May and November 1976, rather than six. The credibility of the witnesses, and the conflicts in the evidence were for the jury to assess and resolve, and it was error for the court to direct a verdict on defendant's counterclaim.

## CONCLUSION

For the reasons stated, the judgment is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded for a New Trial.

Judges ARNOLD and WEBB concur.