**Rudolph S. RICE, Plaintiff and Appellant,**

v.

**CHRYSLER MOTORS CORPORATION and Valley Motor Co., Defendants and Respondents.**

**No. 8808.**

Supreme Court of North Dakota.

May 31, 1972.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, and Jerome S. Rice, of Fredrikson, Byron, Colborn, Bisbee, Hansen & Perlman, Minneapolis, Minn., for plaintiff and appellant.

Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, for defendant and respondent Chrysler Motors Corp.

Letnes & Marshall, Grand Forks, for defendant and respondent Valley Motor Co.

TEIGEN, Judge.

The plaintiff, Rudolph S. Rice (hereinafter Rice), has appealed from two summary judgments entered in favor of the respective defendants, Chrysler Motors Corporation (hereinafter Chrysler) and Valley Motors Company (hereinafter Valley), whereby the plaintiff's complaint against the defendants in an action brought against them jointly for damages for breach of warranty, or in the alternative for a rescission, was dismissed.

On October 17, 1968, Rice purchased from Valley a new 1969 model Imperial LeBaron 4-door hardtop Chrysler automobile equipped with a number of extras, including air-conditioning, automatic speed control, power trunk lock release, radio, power vent windows, vinyl roof, and others, at a price of $7,663.00. He submitted in trade a 1967 Imperial Chrysler for which he received a trade allowance of $3,513.00, and he paid the balance of $4,150.00 in cash.

In his complaint Rice alleges that the automobile was represented to be in first-class working condition, suitable for the uses for which it was intended, and that the defendant Chrysler, by its literature, represented that the said automobile was a first-class luxury automobile designed for trouble-free driving with good quality and construction; that such representations were false, misleading and untrue in that the automobile, in the parlance of the trade, was a "lemon". Rice also alleges that Chrysler and Valley both made special limited express warranties of the vehicle as to material and workmanship. He also alleges that the automobile has given him a great deal of trouble; that it has never functioned properly; that the defects were not apparent at the time of purchase but were latent and began appearing at various times after the purchase of the automobile; that Rice has called these defects to the attention of both defendants at various times but that they have persistently refused to rectify the defects or to pay Rice for his expenses and trouble as a result thereof, although he has duly made demand upon the defendants, and each of them, to do so. Rice claims that because of the defendants' breaches of the express warranties and the implied warranties of fitness for use and merchantability, and misrepresentations, he has been greatly damaged, has been caused great inconvenience, expensive losses of time, has paid out large sums of money for

which he has not been reimbursed, and has been caused embarrassment and annoyance. Thus, he alleges, he has been unable to enjoy the automobile as the first-class, luxury automobile which he purchased. Rice prays for damages in the sum of $5,000.00, or, in the alternative, for a return of the purchase money in exchange for the return to the defendant of the automobile.

Chrysler, by its answer, denied that it manufactured the automobile and affirmatively alleged it was manufactured by Chrysler Corporation and that Rice purchased the automobile under an express warranty in lieu of any warranties or conditions otherwise implied by law, including but not limited to implied warranties of merchantability or fitness for a particular purpose. It further alleged that the remedies available to Rice, under the said express warranty, are the only remedies available to him against Chrysler, and that the defendant Valley is not authorized, under the terms of the said express warranty, to assume any additional liability on the part of Chrysler. Chrysler also alleged that it has no knowledge sufficient to form a belief as to the problems claimed by Rice and, in that regard, alleged that if the express warranty covers such problems, no notice of breach of warranty was given Chrysler by Rice. Chrysler also alleged that it has no knowledge or information sufficient to form a belief as to whether or not the claimed defects in the automobile were called to the attention of the defendant Valley, and that the first notice that the defendant Chrysler had of any of the problems was the commencement of this action.

The defendant Valley admitted Rice purchased the automobile in question from it, but denied all other allegations and alleged affirmatively that the automobile sold Rice was not guaranteed or warranted in any way except pursuant to the terms of the warranty printed on the retail order of which Rice had notice and accepted as a part of the sale.

Valley cross-claimed against Chrysler for indemnity or pro rata share by way of contribution of any amount that may be adjudged against Valley.

Chrysler answered Valley's cross-claim by a general denial.

Chrysler and Valley, separately, moved for summary judgments of dismissal. The motions were consolidated for the purpose of hearing. Summary judgment of dismissal of Rice's claim against Valley was entered on June 18, 1971. Summary judgment of dismissal of Rice's claim against Chrysler was entered on August 9, 1971. Rice has appealed from both summary judgments.

The motions for summary judgments were presented to the trial court on answers to interrogatories and the deposition of Rice. Attached as a part of the interrogatories are the manufacturer's price sheet on the automobile and the purchase order, which contains on the back thereof the conditions and uniform warranty. The purchase order is signed by Rice under the statement, "I have read the conditions of the warranty printed on this and the reverse side of this sheet, and agree to accept them as part of this order." Also attached is Chrysler Corporations' warranty. Because the two warranties differ slightly, we set them forth. They are as follows.

(1) Warranty contained on reverse side of the retail order:

## UNIFORM WARRANTY

(Uniform Warranty of Automobile Manufacturers Association under which Motor Vehicles are sold)

"The Manufacturer warrants each new motor vehicle manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof, including all equipment or trade accessories (except tires)

supplied by the Car Manufacturer, which shall, within 12 months after making delivery of such original purchaser or before such vehicle has been driven 12 thousand (12,000) miles, whichever event shall first occur, be returned to it with transportation charges prepaid, and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied and of all other obligations or liabilities on its part, and it neither assures nor authorizes any other person to assume for it any liability in connection with the sale of its vehicles.

"This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an authorized service station in any way so as, in the judgment of the Manufacturer, to affect its stability or reliability, nor which has been subject to misuse, negligence or accident."

Dealer extends the foregoing warranty to the Purchaser regarding the car sold to the Purchaser hereunder in the same manner as if the word "Dealer" were substituted for the word "Manufacturer" therein; it being understood that the Dealer's obligation under this warranty is limited to making good at its place of business the defective part or parts referred to, within the warranty period, without charge for replacement labor. This warranty by the Dealer is expressly in lieu of all other warranties, expressed implied, and of all other obligations on the part of Dealer, and the Dealer neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of its vehicles.

(2) Warranty contained in warranty booklet placed in the automobile:

Chrysler Corporation warrants this vehicle to the first registered owner only against defects in material and workmanship in normal use as follows: (1) the entire vehicle (except tires) * for 12 months or 12,000 miles of operation after the vehicle is first placed in service, whichever occurs first, from the date of sale or delivery thereto; and (2) the engine block, head and all internal engine parts, water pump, intake manifold, transmission case and all internal transmission parts, torque converter (if so equipped), drive shaft, universal joints, rear axle and differential, and rear wheel bearings for 5 years or 50,000 miles of operation after the vehicle is first placed in service, whichever occurs first, from the date of such sale or delivery. Any part of this vehicle found defective under the conditions of this warranty will be repaired or replaced, at Chrysler's option, without charge at an authorized Imperial, Chrysler, Plymouth, or Dodge dealership.

Chrysler Corporation assumes no responsibility for:

—Routine maintenance such as oil changes, tune ups, front end alignment, wheel balancing, replacement of spark plugs, oil filters, etc.;

—Repairs necessitated by accident, abuse, negligence, or use of parts not approved by Chrysler;

—Normal deterioration of hoses, belts, upholstery, soft trim, or appearance items, due to wear or exposure;

—Loss of use of the vehicle, loss of time, inconvenience, or other consequential damages.

*Required Maintenance Services*

As a condition to this warranty coverage, the following Required Maintenance Services must be performed:

1) Change engine oil every 90 days or 4,000 miles, whichever occurs first;

2) Replace the engine oil filter every second oil change;

3) Clean the carburetor air filter every six months and replace every two years;

4) Check the operation of the crank-case ventilator valve and clean the oil filter cap every six months and replace the ventilator valve every year.

In addition there was submitted to the trial court two warranty repair orders and some garage repair orders.

It appears that Rice did not file supporting affidavits in opposition to the motions. However, in preparing his case, Rice obtained answers to various interrogatories and his deposition was taken by Valley and Chrysler. The interrogatories obtained by Rice and the deposition were filed in the summary judgment proceedings by Valley and Chrysler at the time of the hearing, and were considered by the court as a part of the record in the summary judgment proceedings. The trial court in directing the issuance of the order for summary judgment of dismissal on Valley's motion determined that because Rice had failed to respond to Valley's motion by failing to file proof in opposition Valley was entitled to the summary judgment of dismissal, citing in support Rule 56(e), North Dakota Rules of Civil Procedure.

In its brief to this court Valley has set forth as an ultimate fact the failure of Rice to file supporting proof in opposition to its motion for summary judgment and concludes that for this reason the summary judgment should be affirmed. However, no authority is cited in support of this contention.

Rule 56(e), N.D.R.Civ.P., in part provides:

If he [who opposes a motion for summary judgment] does not so respond [by affidavit, or otherwise, setting forth specific facts showing there is a genuine issue for trial], summary judgment, if appropriate, shall be entered against him.

A summary judgment of dismissal was affirmed by this court in Ray v. Northern Sugar Corporation, 184 N.W.2d 715 (N.D. 1971), on the basis of this rule. However, in that case the movant had submitted proof showing facts which, if undisputed, entitled the movant to summary judgment as a matter of law, and thus we concluded under such circumstances summary judgment was appropriate.

■ The rule does not authorize the entry of a summary judgment merely because the adverse party fails to respond by filing proof in opposition unless it is appropriate to do so.

■ Arizona, under a similar rule, has held that where the papers of the moving party were insufficient to show that the movant was entitled to a summary judgment as a matter of law, summary judgment was improper even though the opposing party filed no affidavit. Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963). We adopt the reasoning and holding of the Arizona court. This is in harmony with the conclusion of the authors in 3 Barron & Holtzoff, p. 112 of the 1971 pocket parts. For similar holdings see also Stubbs v. United States, 428 F.2d 885 (9th Cir. 1970), cert. denied 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621.

The rationale of this holding is that the movant is not relieved of the burden to show there is no trial issue of any material fact before he is entitled to a summary judgment as a matter of law. Rule 56(c), N.D.R.Civ.P. United States v. Dibble, 429 F.2d 598 (9th Cir. 1970); Stubbs v. United States, 428 F.2d 885 (9th Cir. 1970); 6 Moore's Federal Practice (2d ed.) § 56.22 (2), p. 2823; 3 Barron & Holtzoff (1971 pocket part) § 123.51.

There is no merit to the contention that Valley was entitled to a summary judgment of dismissal because Rice failed to respond unless the record will disclose that summary judgment was appropriate on the basis of the proof filed by Valley and Chrysler.

The trial court in granting the motions of both Valley and Chrysler also found there was no genuine issue as to any mate-

rial fact and that Valley and Chrysler were entitled to summary judgments of dismissal as a matter of law.

The trial court in a memorandum decision filed in Chrysler's motion for summary judgment of dismissal found that at the time of delivery of the automobile Rice signed a retail order which contained Valley's warranty on the reverse side and received Chrysler's warranty booklet containing Chrysler's warranty. The court found that Chrysler's warranty varies from Valley's warranty in that Valley's warranty does not mention the exclusion of implied warranty of merchantability; that, however, both warranties contained a 12-month or 12,000-mile limitation. It found the automobile had been driven over 48,000 miles at the time of the hearing and was still in use. It also found that Chrysler's warranty excludes a warranty of merchantability and thus the only basis on which a warranty of merchantability can be pressed against Chrysler is on the basis of Valley's warranty, but the trial court determined that because Chrysler's warranty contained a provision that its terms could not be varied Valley's warranty was not applicable to Chrysler. The trial court then states that, based on Rice's testimony contained in his answers to interrogatories and his deposition, it found as a matter of law that the automobile was of merchantable quality and that although it was not a perfect machine it was suitable for the ordinary purpose for which it was manufactured. It concluded as a matter of law that there had been no breach of warranty, either express or implied, in view of the fact that the automobile had been driven over 48,000 miles and was still being used by Rice. In addition, the trial court found that proper notice of breach of warranty was not given Chrysler within a reasonable time after the Code requirements, in that notice was not given Chrysler until May 21, 1970, over one and one-half years after Rice purchased the automobile, and at which time he had driven it over 30,000 miles.

■ In summary judgment proceedings the moving party is entitled to a summary judgment if there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c), N.D.R.Civ.P.; Roquette v. North American Van Lines, Inc., 187 N. W.2d 78 (N.D.1971); Zueger v. Boehm, 164 N.W.2d 901 (N.D.1969); Wolff v. Light, 156 N.W.2d 175 (N.D.1968).

■ However, under this rule a motion for summary judgment will be granted only if, after taking the view of the evidence most favorable to the party against whom the summary judgment is sought, it appears there is no genuine issue as to any material fact and that the party seeking the summary judgment is entitled to it as a matter of law. Weidner v. Engelhart, 176 N.W.2d 509 (N.D.1970); Titus v. Titus, 154 N.W.2d 391 (N.D.1967).

The one who moves for a summary judgment has the burden of demonstrating clearly that there is no genuine issue of material fact. The evidence presented at the hearing on such a motion must be construed in favor of the party opposing the motion who will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence, that indicates the presence of a genuine issue of fact. Temme v. Traxel, 102 N.W.2d 1 (N.D. 1960).

We now examine the proof presented in the light of the foregoing rules. In doing so we will assume, without so holding, that the express warranties apply, and that implied warranties of merchantability or fitness for a particular purpose are excluded. This is in harmony with the contention of both Valley and Chrysler.

In the light of the rule set forth above, the proof establishes that Rice purchased the automobile in question from Valley, a Chrysler dealer, and took delivery on October 17, 1968. It was a new 1969 model Imperial LeBaron 4-door hardtop Chrysler automobile. Rice executed a retail order

form which contained on its reverse side certain conditions and a warranty. The warranty is set forth above. Rice paid for the automobile in full. At the time of delivery there was contained in the automobile Chrysler's warranty booklet containing Chrysler's warranty. However, Rice was not advised of this fact, nor was he asked to sign an acknowledgment that he received the warranty. He discovered the booklet containing the warranty at a later date. Both warranties, however, contained 12-month or 12,000-mile limitations. Rice lives at Roseau, Minnesota, and Valley is located in Grand Forks, North Dakota. Rice encountered difficulties with the automobile the day he drove it home in that the air-conditioner would not go on or off. He took the automobile to a local Roseau Dodge garage but was advised that he should take it back to Valley. He then took the automobile back to Valley the next time he went to Grand Forks, which was about a month after the purchase, and Valley remedied this problem. Valley also checked the motor at that time, as Rice testified "it wasn't operating right."

Rice took the automobile to Brookdale Chrysler-Plymouth, Inc., at Brooklyn Center, Minnesota, on February 21, 1969. According to the warranty repair order prepared by this garage the odometer reading was 5,498 miles, and according to the notations made therein the mechanic was instructed to (1) "Ck thermostat no heat"; (2) "Gauges inoperative. Gas gauge—oil gauge, temp. gauge"; and (3) "Htr blower would not come on to any position this A. M."

Another Valley repair order, dated February 27, 1969, contains the notation to the mechanic to "ck. all gauges (work sometimes) ck. heater operation." This order contained the note, "First time customer came in for repairs at which time we ordered parts for his car."

The next repair order made a part of this record is dated July 16, 1969, by Valley. It has a number of instructions to the mechanic which, because of poor copy, are difficult to read. However, it appears that the instructions were as follows: (1) "Repair auto temp."; (2) "Auto temp control motor wiring of socket was arcing so that the motor would cut off and on. Test and repair the wiring [word unintelligible] to correct"; (3) "Repair voltage limits. Fuel and temperature gauge were very erratic (fluxuated all the time). Test and replace instrument panel voltage limits to correct"; and (4) "Replace oil sending unit. Oil pressure sending unit was weak and oil gauge didn't register properly. Test and replace oil pressure sending unit with ATC." At the time of this repair it indicated the odometer showed a mileage of 11,572.

Rice was examined on deposition by both Valley and Chrysler. Considerable testimony was adduced. Rice admitted the gauges and the heater blower were repaired but that these repairs "still didn't correct that faltering in the operation of the car." He testified that when he took delivery after these respective repairs he assumed that the car had been "fixed. It run." And, "After I left there the car still had that problem. I didn't know it when I left the garage." He testified that he had taken it back many times. Also that he had taken it to other garages, most, if not all, of which appeared to have been Chrysler or Dodge garages. We take judicial notice of the fact that the Imperial, the Chrysler, the Dodge, and the Plymouth automobiles are of the same corporate origin.

According to Rice's answer to interrogatories and answers to the questions posed in the deposition, he encountered a number of problems with the automobile. Some of these problems were corrected, and some were not.

It appears that corrections were made to allow the heater to work, that the air-conditioner controls were repaired or replaced, but that the air-conditioner eventually malfunctioned to the point where the compres-

sor had to be replaced, which occurred after the warranty period had expired and this correction was at the expense of Rice. The malfunctioning of the various gauges apparently were successfully repaired. The automatic radio aerial was replaced with a manually operated aerial. However, it also appears from the evidence that two major problems in the operation of the automobile were never corrected or rectified, although complaints as to these problems were made to Valley within the warranty period, and he also made complaints to other Chrysler garages in various cities and states on numerous occasions. These problems Rice described in general layman's terms without reference to technical parts of the automobile. He complained the automobile falters and surges intermittently when being driven; and that the electrical system malfunctions while driving at night with the air-conditioner on and headlights burning in that when the brakes are applied the lights dim and the directional signals refuse to function. We find the proof also shows the intermittent faltering and surging of the motor and the malfunctioning of the electrical system were called to the attention of Valley during the warranty period but that the causes of these malfunctions were not determined and the malfunctions were never rectified. The record indicates these malfunctions have been continuing and still continue intermittently as chronic, lingering problems, and that Rice has taken the automobile to a number of Chrysler garages in a number of States in the course of his travels in an attempt to have these problems rectified, but without success. As we understand the deposition, Rice took the car to Valley on at least three occasions during the warranty period, when he complained that the automobile was not functioning properly, but that the faltering and surging of the motor and the malfunctioning of the electrical system were never corrected and still existed at the time deposition was taken. Rice testified that he spent a considerable amount of his own money in an attempt to have these defects cured, but to no avail.

He has taken the automobile to garages in various cities in Minnesota, his home State, to garages in Arizona, Florida, Utah and Tennessee, and to other numerous garages and filling stations in various localities, the names and places of which he did not recall.

Rice is not an automobile mechanic. He testified:

No, I am not a mechanic and I can't say what materials are defective.

Well, they fixed or did various things to the car so I assumed that they assumed they knew what they were doing but apparently they never did the right thing. They never fixed the problem.

I know how the car operates if something hasn't been fixed but I don't know what it is.

When asked what defective materials still remain in the automobile that haven't been repaired, Rice answered, "If I knew that I would go and have the car fixed."

Valley and Chrysler point to testimony of Rice in which he admits that certain specific complaints of deficiencies were rectified and argue the conditions of the express warranty have been fulfilled. These defects relate to the blower on the heater, the various gauges and controls of the air-conditioning system, the automatic temperature control, etc., which Rice testified were satisfactorily repaired or replaced. He complained, however, that the automatically controlled aerial was replaced by a manually controlled aerial, and that the air-conditioner compressor had to be replaced after the warranty expired, at his own expense, and denied that the motor problem or the electrical problem had been solved or rectified.

■ We do not believe that the law requires that a purchaser of a modern automobile under an express limited warranty is required to make demand for fulfillment of the warranty conditions in express language, pointing out in detail in technical

terms the defective parts, materials, or workmanship which need to be rectified. It is sufficient if he describes the malfunctioning in layman's terms. It then becomes the duty of the warrantor to determine what parts, materials, or workmanship is defective and in need of replacement or repair. The warranty itself, we believe, imposes this duty upon the warrantor. It states, "Any part of this vehicle found to be defective under the conditions of this warranty will be repaired or replaced, at Chrysler's option, without charge at an authorized Imperial, Chrysler, Plymouth, or Dodge dealership".

We find the language in Sutter v. St. Clair Motors, Inc., 44 Ill.App.2d 318, 194 N.E.2d 674, 677 (1963), in relation to the complexities of the modern automobile and the problems which face a layman owner is expressive of the competitive positions of the parties involved.

Lastly, we point out that the ancient rules of "caveat emptor" cannot always apply in today's transactions. Courts must be realistic of the world about. We would be taking a narrow view of what realistically occurs when a transaction such as the one involved here is made, if we allowed the express warranty, hidden as it was here, to protect the seller. The complexities of today's machines are far too subtle to allow a lay purchaser to deal at arm's length with a skilled merchant. No longer in today's marts do we normally have people dealing on an equal caveat emptor basis. The machine which is purchased today by the clerk or housewife from the merchant who has specialized training and carefully milled tools, is not purchased with any understanding but what it will perform what it was made to do. The attempt to negative such undertaking by an express warranty such as we have here, unless it is clearly conspicuous to the buyer and specific in its purpose is contrary to public policy. The buyer of a machine today need not beware his seller. The trend in all of our courts today is to pro-

tect a person who may properly be uninformed. Such a person is one who today buys an automobile or other complex machine sold to the general public. It would be unconscionable to say that he must have the skill necessary to know that he must reject a new car or other machine tendered for sale. It would be inequitable to require him to know that an inconspicuous general express warranty could defeat his right to have a machine that properly performed.

The Supreme Court of Kansas held that where the buyer of a new automobile returned it to the dealer for the purpose of correcting defects covered by the new-car limited express warranty it became incumbent upon the dealer to find such defects and replace them or to locate the improper assembly and remedy the defect pursuant to the terms of the warranty. Allen v. Brown, 181 Kan. 301, 310 P.2d 923, 927, 928 (1957). In discussing the issue in its opinion the Kansas Court said:

As is often the case in the purchase of a new automobile, the purchaser on discovering mechanical conditions which do not seem to be normal in the operation of the motor vehicle, will return the automobile to the dealer from whom the purchase was made. The particular defect is usually unknown to the purchaser and it is upon the dealer that he relies for discovery of the defect causing the unusual mechanical functioning of the vehicle.

. . . . . .

The purchaser of a new automobile does not know the precise cause, and the dealer with his mechanics may, after calling in the factory experts and representatives, take many months to locate the defect.

Under an express warranty as alleged in the petition, it would place a tremendous burden upon the purchaser of a new motor vehicle to find the precise part or parts of the vehicle which were defective and direct the dealer to replace

them or remedy the defect. If the operation of such vehicle is mechanically defective and the automobile is returned to the dealer for the purpose of correcting these defects, it is incumbent upon the dealer to find such defective part or parts and replace them pursuant to the terms of the warranty or to locate the assembly that has been improperly assembled and remedy the defect.

This requirement was also applied in Becker Roofing Co. v. Pike, 230 Ala. 289, 160 So. 692 (1935), in which case the Alabama Court held that on notice and full opportunity to inspect and repair a defective guaranteed roof the obligation was on the seller to locate the defects and remedy them rather than on the buyer to find and point out the leaks to the seller.

 Valley and Chrysler maintain they have fulfilled their respective warranties and that there is no breach. However, from an examination of the facts contained in the record and to which we have alluded above, we find there are issues of fact to be determined which should be left to the trier of the facts in a trial.

 Rice, at the time the deposition was taken, had owned the automobile over one and one-half years and had driven it about 48,000 miles. We do not believe, however, that the law contemplates that he be penalized because he has not commenced suit earlier or has attempted to have the problem rectified by going to various Chrysler dealers over the country as these problems reoccurred in view of the fact that these problems appear to have been called to the attention of Valley during the warranty period. The proof, we believe, tends to establish that Valley is an authorized Chrysler dealer. We believe it fair to infer in this summary judgment proceeding, from the repair order forms, the retail order form, and the manufacturer's suggested retail price label, which instruments were submitted as a part of the proof, that this relationship exists. The retail order form and the repair order forms indicate on the printed portion of the forms that Valley sells Imperial, Chrysler, Dodge cars and Dodge trucks, and the manufacturer's retail price label affixed to the automobile by Chrysler indicates it was printed by or at the request of the Plymouth Division of Chrysler Motors Corporation and that the automobile described therein was sold to Valley.

From an examination of the record presented, we find there are genuine issues of material fact for trial. The record does not establish as a matter of law that an implied warranty of merchantability is excluded or that the alleged express warranties have been fulfilled. For these reasons the two summary judgments dismissing the action against the defendants Valley and Chrysler, respectively, are reversed.

STRUTZ, C. J., and KNUDSON, PAULSON, and ERICKSTAD, JJ., concur.