FARMERS ELEVATOR COMPANY, Plaintiff, Appellant and Cross-Appellee,

v.

Jerry DAVID, Defendant, Appellee and Cross-Appellant.

Civ. No. 9094.

Supreme Court of North Dakota.

Oct. 7, 1975.

Neil B. Dieterich, Minneapolis, Minn., and Johnson, Milloy, Eckert & Johnson, Wahpeton, for plaintiff, appellant and cross-appellee; argued by Mr. Dieterich.

Bayard Lewis, Wahpeton, for defendant, appellee and cross-appellant.

ERICKSTAD, Chief Justice.

In this case, Farmers Elevator Company, a North Dakota cooperative association corporation, appeals from a summary judgment dismissing its complaint, and the defendant, Jerry David, cross-appeals from the summary judgment dismissing his counterclaim.

The complaint asserts that on or about December 18, 1972, David agreed to sell to the elevator company 15,000 bushels of number 2 yellow corn at $1.36 per bushel to be delivered in June of 1973; that on or about August 17, 1973, the elevator company called for delivery of said corn and that David refused to deliver the corn and repudiated the contract; that because of the repudiation and breach of contract, David is indebted to the elevator company to the extent of $1.16 per bushel.

David's answer and counterclaim generally denies the allegations of the complaint; denies the existence of any contract; denies the breach of any contract; and asserts that if any contract existed between the parties, it was breached by the elevator company and not David.

In his counterclaim, David asserts that the action was brought against him for purposes of harassment with knowledge that the elevator company had no legitimate cause of action against him.

He further asserts that by this malicious act, he has been damaged in the sum of not less than $10,000 and prays for judgment accordingly.

The elevator company filed a reply to the counterclaim denying each and every allegation thereof.

This case was noted for jury trial, and in fact, the counterclaim demanded a jury trial but prior to trial time, David moved for summary judgment of dismissal on the grounds that the pleadings, depositions, and admissions on file disclosed that there was no genuine issue as to any material fact and that he was entitled to a summary judgment of dismissal of the complaint as a matter of law.

In his oral statement granting the motion, the trial court concluded that there was no contract and that, if there was a contract, it was breached because time was of the essence of the contract.

Thereafter, the elevator company moved for a summary judgment of dismissal on the grounds that the facts did not support a claim based upon malicious prosecution. The court granted that motion also. It is from the summary judgments dismissing the complaint and the counterclaim that the parties appeal.

We shall first consider the appeal from the dismissal of the complaint.

The first issue raised by the elevator company is whether there is a genuine issue as to the validity of the contract. We believe that the first issue has been resolved through counsel's statement during oral argument, that he was waiving the defense of the statute of frauds for the reason that he

had failed to assert the statute of frauds as an affirmative defense pursuant to Rule 8(c) of the North Dakota Rules of Civil Procedure and for the further reason that he was relying upon the written memorandum as proof of the fact that time was of the essence of the contract.

David states the second issue to be whether there is a genuine issue as to whether the elevator company's failure to take delivery upon David's offer to deliver in early June, 1973, excused David from performing. The pertinent part of Rule 56(c) of the North Dakota Rules of Civil Procedure reads:

"Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

The elevator company asserts that in resolving issue number 2, we must determine whether time was of the essence of the contract.

Pertinent is Section 9–07–23, N.D.C.C., which reads:

"Time is of the essence of a contract if it is provided expressly by the terms of the contract or if such was the intention of the parties as disclosed thereby." § 9–07–23, N.D.C.C.

David contends that the written memorandum, which was executed by an employee of the elevator company and written in his handwriting shortly after the oral contract was entered into, discloses that time is of the essence. He directs our attention to the words "June delivery."

The memo follows:

"GRAIN CONTRACT

"12–18–72

"This is to Certify, That I hereby agree to sell to Farmers Elev. Co., and to deliver the same at their elevator at Wyndmere on or before June 30, 1973, the following

described grain 15,000 bu. corn at 1.36 basis 2 y c 54 # 15 moist (June delivery).

\*     \*     \*     \*     \*     \*

"Per phone Jerry David
"By Sid Mauch"

[Underlining indicates handwritten material.]

In *Rice v. Chrysler Motors Corp.,* 198 N.W.2d 247 (N.D.1972), this court said:

"In summary judgment proceedings the moving party is entitled to a summary judgment if there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c), N.D.R.Civ.P.; *Roquette v. North American Van Lines, Inc.,* 187 N.W.2d 78 (N.D.1971); *Zueger v. Boehm,* 164 N.W.2d 901 (N.D.1969); *Wolff v. Light,* 156 N.W.2d 175 (N.D.1968).

"However, under this rule a motion for summary judgment will be granted only if, after taking the view of the evidence most favorable to the party against whom the summary judgment is sought, it appears there is no genuine issue as to any material fact and that the party seeking the summary judgment is entitled to it as a matter of law. *Weidner v. Engelhart,* 176 N.W.2d 509 (N.D.1970); *Titus v. Titus,* 154 N.W.2d 391 (N.D.1967).

"The one who moves for a summary judgment has the burden of demonstrating clearly that there is no genuine issue of material fact. The evidence presented at the hearing on such a motion must be construed in favor of the party opposing the motion who will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence, that indicates the presence of a genuine issue of fact. *Temme v. Traxel,* 102 N.W.2d 1 (N.D.1960)." *Rice v. Chrysler Motors Corp.,* 198 N.W.2d 247 (N.D.1972).

Considering the evidence in the light most favorable to the party against whom the motion for summary judgment was made, we believe that it is gleanable from the record which includes affidavits and

depositions, that on the 18th day of December, 1972, David, through a telephone conversation with Sid Mauch, an employee of the elevator company, agreed to sell 15,000 bushels of corn at $1.36 per bushel for June delivery during the year 1973, and that Sid Mauch was authorized to contract for the elevator company and did contract to buy said corn at the quoted price for June delivery; that on that date or shortly before that as a result of conversations with Harley Bruun, the elevator manager, and David, Bruun sold a similar amount of corn for June delivery; that shortly thereafter, Sid Mauch on behalf of the elevator company, delivered to David a memorandum of the oral agreement containing similar terms; that. during the middle of June, 1973, David attempted to secure permission to deliver the corn to the elevator company but was informed by the manager that he could not take the corn because he did not have room because of the shortage of boxcars for shipment at that time; that there had been a shortage of boxcars for some time; that on the 17th day of August, 1973, the manager of the elevator company telephoned David and informed him that he could now accept delivery of the corn to which David answered that he did not believe he owed the elevator any corn; that in preparing for the harvest of 1973, David had to move about 18 truck loads of oats from certain facilities on his farm to other facilities on his farm because of the elevator company's failure to accept delivery during June of 1973, and that the market price of corn in August, 1973, exceeded the contract price.

■ We think that under these circumstances there was a genuine issue as to a number of material facts. The material facts involve such questions as whether time was of the essence of the contract, whether the delay in accepting the corn was unreasonable, and whether the damages resulting from the delay prevented a substantial compliance with the contract.

In *Nelson v. Glasoe,* 231 N.W.2d 766 (N.D. 1975), our court recently affirmed a trial court finding, in a case in which the delivery date was stated within the contract, that time was not of the essence of the contract, notwithstanding that the contract called for delivery within a certain period of time and allowed for a 60-day extension. In that case, the trial court was acting as the trier of the facts and was not reacting to a motion for summary judgment. That case is relevant to this issue in that the trial court therein concluded that the writing was unclear as to whether time was of the essence and that the meaning of the writing was determined by the trier of the facts. In concluding, in this case, that it was a legal question, the trial court erred.

Whether a contract is on its face clear and unambiguous is a question to be resolved by the trial judge. " * * * [I]t is the duty of the court to construe the contract, but when the court has construed the contract as being ambiguous, the jury must then determine the intention of the parties to the contract." *Stetson v. Investors Oil, Inc.,* 140 N.W.2d 349 (N.D.1966).

Unless a contract clearly speaks to the issue and specifies that time is of the essence or unless the subject matter of the contract involves seasonal or very perishable commodities, courts hesitate to conclude that time is of the essence of a contract:

"It has been stated, however, that the tendency of modern authority at law as well as in equity is to regard the question as one of construction to be determined by the intent of the parties, and to hold that time is not ordinarily of the essence of the contract unless made so by express stipulation or unless there is something connected with the purpose of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract must be performed at or within the time named. * * * " 17 Am.Jur.2d 769 (1964).

■ A contract that is not clear and unambiguous should be construed most strongly against the party who proposed it

and who presumably looked out for his best interests in the process. In *Farmers Union Grain Terminal Association v. Nelson*, 223 N.W.2d 494, 497 (N.D.1974), we said that grain purchase contracts are "contracts of adhesion" and that such contracts should be examined with special scrutiny by the courts to assure that they are not applied in an unfair or unconscionable manner against the party who did not participate in their drafting. The evidentiary facts under which the contract was entered into would determine if the contract was one of adhesion and not the memorandum alone.

■ We do not believe that the office memorandum prepared by Sid Mauch clearly and unambiguously on its face indicates that time is of the essence of the agreement. Because it was not clear that time was of the essence, the trial court should have permitted the case to go to trial so that extrinsic evidence could have been received and weighed by the jury. Where an issue ceases to be purely a matter of law, such as in the instant case, and reference must be made to extrinsic facts to determine it, the trier of the facts, whether judge or jury, must infer "ultimate facts" from evidentiary facts. When the facts may not be in dispute but the inferences reasonably deducible therefrom may be conflicting, summary judgment is inappropriate.

Our conclusion in this respect is consistent with our decisions in *Rice v. Chrysler Motors Corp.*, supra, 198 N.W.2d 247, and *Volk v. Auto-Dine Corp.*, 177 N.W.2d 525 (N.D.1970).

■ In *Thompson v. Hannah Farmers Coop. Elevator Co.*, 79 N.W.2d 31 (N.D. 1956), this court, in reviewing the trial court's dismissal at the close of plaintiff's case (different from, but analogous to, a motion for summary judgment situation), commented:

"It is only where the facts bearing upon the issues are in dispute, and the evidence offers room for reasonable difference of opinion, that the issue is for the jury. Where the evidence permits but one reasonable conclusion, the question should be determined by the court as one of law. [Citations omitted.]

"Where the evidence is in conflict and reasonable men might draw different conclusions therefrom, the question is one for the jury. But before there is any need for submission of a cause to a jury, the evidence offered as to the ultimate facts must be such that by the application of normal intellectual faculties of reasonable men, they might by customary and normal processes of reasoning arrive at different judgments or conclusions." [Citations omitted.] 79 N.W.2d at 37.

Remembering that the movant "in an action on contract has the burden of establishing that the facts which entitle him to judgment are not disputed," 6 Moore's Federal Practice, pp. 2509–2510 (2d ed. 1974), let us review the facts explaining the meaning and materiality of the June delivery date to discover whether the evidence permits but one reasonable conclusion.

David did not inform the elevator company that time of delivery was essential to him, although it was apparently he who suggested a June delivery.

It is common knowledge that farmers prefer to dispose of stored grain prior to harvest to make room for the new crop, but it is also common knowledge that railroad boxcars are in short supply at that time and that farmers often have to wait until boxcars are available for shipment of grain and that a reasonable amount of patience is necessary on the part of both the seller and the buyer.

David did not inform the elevator company that he had to move the grain from one bin to another or that he needed the rodent-proof storage space that his corn was in for newly harvested wheat. His attempts to deliver the corn in June, rather than illustrating his need for freeing storage space at his farm, may have merely been in response to his own belief "that I thought I was

obligated to deliver to them." Indeed, he admitted that he kept the corn involved for six to eight months after June.

Furthermore, there is testimony that David did not subjectively consider his potential storage difficulties at the time he agreed to sell the corn, or that, if he did, he did not consider those storage difficulties material. In the context relating to David's having moved the oats from one bin to another, this exchange occurred:

"Q [by Mr. Dieterich]. Well, why did you want to deliver your corn before the end of June?

"A [by Mr. David]. Because—well, I wanted to sell some corn, I thought it was a fair price."

Viewing the evidence in the light most favorable to the plaintiff, we must conclude that the pleadings, affidavits, and depositions do present a genuine issue of fact in determining whether the parties intended time to be of the essence.

If time is not of the essence of the contract, the trial court could nevertheless conclude that the delay until August 17 for delivery was an unreasonable delay or that the damages caused by the elevator's failure to accept delivery were so great as to vitiate David's gain from the transaction. Considering the absence of an estimate of the damages caused to David by his having to move nearly 20 truck loads of oats from one bin to a granary 300 feet distant, we do not believe that the evidence presented in the record is sufficient to justify a conclusion that reasonable men could not differ on the issue.

Whether the delay was unreasonable depends on a number of factors, some of which are mentioned in the record. There is no allegation that the elevator company was accepting corn before August 17 that it had contracted for after it had contracted for David's corn. There are undisputed statements that a boxcar shortage—always an anathema to North Dakota farmers and elevators—existed that summer. David himself stated that the United States Department of Agriculture had called in a large quantity of grain that year.

We also note that the role of custom and usage in interpreting grain sales contracts is discussed very little in the record. "Whether a custom or usage exists . . . is a question of fact." *Tong v. Borstad,* 231 N.W.2d 795, 798 (N.D.1975). "The cases are legion in which it has been held that evidence of custom and usage is admissible to ascertain the intention of the parties to contracts and to aid in the interpretation of contracts." *Id,* at 800.

On the issue of unreasonable delay, we cannot conclude that there is no room for reasonable men to differ. In addition, we do not think that the record is "presently adequate to decide the legal question presented." 6 Moore's Federal Practice, p. 2510 (2d ed. 1974).

Before we leave this issue, lest it be argued that we have not considered all of David's argument relative thereto, it should be noted that David argues there was a binding contract, that the elevator company breached the contract and that it did not substantially comply with it. He states that the issue of substantial compliance is not a fact question and that we so determined that issue in *Cargill, Inc. v. Kavanaugh,* 228 N.W.2d 133 (N.D.1975).

An examination of that case discloses that we were reviewing findings of the trial court under Rule 52(a) of the North Dakota Rules of Civil Procedure rather than the propriety of a summary judgment granted by the trial court under Rule 56 of the North Dakota Rules of Civil Procedure. We do not construe *Kavanaugh* to be contrary to our holding in the instant case.

Another feature which distinguishes *Kavanaugh* from the instant case is that in *Kavanaugh* a specific liquidated damages clause provided an alternative performance (delivery of grain or payment of money). No such clause is contained in the instant contract.

The last issue is whether the trial court erred in granting summary judgment of dismissal of the counterclaim.

The counterclaim alleges, in effect, that the elevator company maliciously prosecuted a civil action without probable cause.

It has been said that malicious prosecution is not favored in law.

Interesting in that connection is what is said by the authors of American Jurisprudence 2d as follows:

"It is frequently said that the action for malicious prosecution is not favored in law. Hence, as has often been pointed out, the action has been hedged about by limitations more stringent than those surrounding actions based on almost any other conduct causing damage to another, and the courts have allowed recovery only when the requirements limiting it have been fully complied with. Since, however, probably no form of action can be said to be a favored one, or one that can be successfully maintained without sufficient proof of its essential elements, it has been suggested that perhaps a better way of expressing the idea is to say that the action should be properly guarded and its true principles strictly adhered to, and that when this is done and the proper elements to support the action have been presented, the action will be readily upheld." 52 Am.Jur.2d 188, 189.

Chief Justice Corliss in discussing an action for malicious prosecution in *Kolka v. Jones*, 6 N.D. 461, 71 N.W. 558 (N.D.1897) while urging support for such an action although the person of the defendant was not arrested or his property interfered with and although no other circumstances were shown to exist, said that in his experience of ten years as a student and practicing lawyer in the State of New York, where such an action was permitted under those circumstances, he had not heard of an action in that state for the malicious prosecution of a civil suit. Under the English doctrine the action would not have been

permitted in those circumstances. See *Kolka v. Jones, supra,* 71 N.W. 558 at page 561.

He apparently made that statement in support of his belief that following a rule contrary to the English rule in this regard would not result in a proliferation of unfounded malicious prosecution claims.

In light of the concern, however, that courts have shared, we think it important at least to know what courts generally have required as the elements of an action for malicious prosecution. Certain writers describe the elements of the claim for malicious prosecution as follows:

" * * * In general, to authorize the maintenance of an action for malicious prosecution, the following elements must be shown: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance of, the defendant; (3) *the termination of such proceedings in plaintiff's favor;* (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of injury or damage as a result of prosecution or proceeding." 52 Am.Jur.2d 190 (1970). [Emphasis added.]

From this we see that the proceedings must have terminated in the plaintiff's favor. Such is not the situation in the instant case.

David responds to the contention that the proceedings must have terminated in the plaintiff's favor before one may bring such a claim by saying that this is an antiquated requirement not consistent with the objective of the new Rules of Civil Procedure, which encourages a disposition of all claims at one time. He refers us to the case of *Herendeen v. Lay Realty Co.,* 75 N.Y.S.2d 836 (Sup.Ct.1947), as a decision in support of his position.

██ *Herendeen* is a decision of the trial court of New York and must be considered in light of countless appellate decisions across the country to the contrary. Because we believe that there is more to be

lost than there is to be gained by encouraging premature suits for malicious prosecution, we believe that it is better to require the proof of termination of the proceeding in the plaintiff's favor· as one of the elements of a proper claim for malicious prosecution. See *Knoshaug v. Pollman,* 18 F.R.D. 386, 388 (D.N.D.1956).

■ For these reasons, the court would have been justified in granting a 12(b) motion for dismissal without prejudice. The trial court granted a 56(b) motion for summary judgment and ordered dismissal with prejudice on the ground that malice, an essential element of the claim of malicious prosecution, was lacking. In so doing, it decided an issue dependent upon the determination of facts and reasonable inferences deducible therefrom.

Our view of the record relative thereto is that neither the facts nor inferences reasonably deducible therefrom create a material issue.

■ We accordingly hold that the trial court did not err in granting the motion for a summary judgment of dismissal of the counterclaim, and we so hold notwithstanding that the elevator company did not assert the lack of this element in the claim of malicious prosecution as an affirmative defense as David asserts should have been pleaded under Rule 8(c) of the North Dakota Rules of Civil Procedure. Since such a defense is not specifically named under Rule 8(c) as being required to be affirmatively pleaded and because to require it to be so pleaded under the general language of 8(c) could result in a trap to the unwary, we decline to require that it be so pleaded.

For the reasons stated in this opinion, the judgment of the trial court dismissing the complaint is reversed, the judgment dismissing the counterclaim for malicious prosecution of a civil claim is affirmed, and the case is remanded to the trial court for proceedings not inconsistent with this opinion.

ERICKSTAD, C. J., and VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.