841 F.2d 1245
 6 UCC Rep.Serv.2d 63
 MASSEY-FERGUSON CREDIT CORPORATION, Plaintiff,
v.
Wanda WEBBER, Defendant & Third Party Plaintiff-Appellant,
v.
CAPITOL FUNDS, INC., d/b/a Southridge Tractor and Equipment
Company; Massey- Ferguson, Inc., Third Party
Defendant-Appellee.
MASSEY-FERGUSON CREDIT CORPORATION, Plaintiff,
v.
Wanda WEBBER, Defendant & Third Party Plaintiff-Appellee,
v.
MASSEY-FERGUSON, INC., Third Party Defendant-Appellant,
and
Capitol Funds, Inc., d/b/a Southridge Tractor and Equipment Company.
 Nos. 86-1615, 86-1624.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 7, 1987.
Decided March 18, 1988.
Rehearing Denied April 22, 1988.
 
 William E. Lamb, Jr., Shelby, N.C., for appellant.
 Daniel Gray Clodfelter (Moore & Van Allen, Charlotte, N.C., on brief), for appellee.
 Before RUSSELL and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 K.K. HALL, Circuit Judge:
 
 
 1
 This is an apparently ordinary breach of warranty case brought in federal court pursuant to diversity jurisdiction that has become surprisingly convoluted as it has proceeded through the courts below. Wanda Webber, a North Carolina resident, sought damages for an allegedly defective piece of farm equipment manufactured by Massey-Ferguson, Inc. ("Massey-Ferguson") and sold under a financing agreement between Webber and Massey-Ferguson Credit Corporation ("Massey-Ferguson Credit"). Now, after three trials before two different federal judges, the consolidated appeal and cross-appeal of Webber and Massey-Ferguson are before this Court. Webber challenges the district court orders setting aside the jury's award of damages after the first and second trials. Webber also appeals the court's failure to submit the issue of revocation of acceptance to the juries at any of the three trials. Massey-Ferguson cross-appeals the denial of its motions for judgment notwithstanding the verdict ("jnov") on both the issues of liability and damages. Because we find that Webber's damages were properly assessed in the first trial, we affirm in part, reverse in part, and remand.
 
 I.
 
 2
 In September of 1982, Webber purchased a Massey-Ferguson 540 combine, with attachments, including a grain table, and a reel and reel drive from Southridge Tractor and Equipment Company in Shelby, North Carolina. In connection with the purchase, Webber entered into a retail installment contract and security agreement with Massey-Ferguson Credit. The total purchase price for all equipment was $46,027.70. After a down payment of $16,137.70, which included a $10,000 rebate, Webber financed $29,970.00 at 18.9% interest with Massey-Ferguson Credit.
 
 
 3
 It is undisputed that the combine did not at any time perform to Webber's satisfaction. According to the trial testimony of Webber and witnesses on her behalf, the machine lost approximately twenty percent of the crops it harvested rather than the two to three percent that would normally have been expected. Webber also testified that repeated remedial efforts by the dealer's service personnel were unavailing. Despite the difficulties, it does appear, however, that Webber utilized the combine in some fashion in three harvests on her farm.
 
 
 4
 By late 1983, Webber had begun to fall behind in the payments due under the installment purchase agreement. In December of 1983, she informed Wade Young, a representative of Massey-Ferguson Credit, that she was having problems with the machine and was not certain that she intended to pay for it. Despite Webber's statement, no further action was taken by Massey-Ferguson Credit until September of 1984 when it commenced an action to recover the unpaid balance of the installment contract.[1] Webber counterclaimed against the Credit Corporation alleging breach of express and implied warranties and claiming damages from the breach. Webber also brought a third-party action against Massey-Ferguson, Inc., the manufacturer, and Southridge Tractor, the selling dealer.
 
 
 5
 On March 26, 1985, Massey-Ferguson Credit moved for summary judgment in its favor. The district court orally granted the motion on April 3, 1985, but did not enter a written order until July 11, 1986.[2] Webber's third-party complaints against Massey-Ferguson and Southridge Tractor then proceeded to trial. At the conclusion of Webber's evidence, the court granted a directed verdict in favor of Southridge Tractor, but denied a similar motion by Massey-Ferguson. The question of Massey-Ferguson's liability was thus submitted to the jury.
 
 
 6
 After deliberating, the jury found that Massey-Ferguson had breached its express warranty that the equipment sold to Webber would be free of "defects in material and workmanship." The jury also determined that Webber was entitled to damages in the amount of $30,000. Massey-Ferguson promptly moved for judgment notwithstanding the verdict, or in the alternative, a new trial.
 
 
 7
 The district court denied Massey-Ferguson's jnov motion with regard to the question of liability, concluding that the jury could reasonably infer that the combine was defective and that the defendant's effort at repair had failed its "essential purpose." The court found, however, that the damage award was improper because Webber had not properly proven the value of the equipment at the time of acceptance. A new trial on the issue of damages alone was, therefore, ordered.
 
 
 8
 The second trial was held on October 7, 1985. In her effort to establish her damages, Webber presented witness testimony that was substantially similar to that offered at the first trial. The jury returned a verdict for Webber in the amount of $35,000. Massey-Ferguson again moved for either jnov or a new trial.
 
 
 9
 For the second time, the district court set aside the award of damages. The court concluded that although Webber's evidence sufficiently established the fair market value of the combine at $35,000, a damage award in that amount assumed that the defective combine had no value at all. The court reasoned that it was "contrary to common sense" to hold that a new combine never used was utterly worthless. Accordingly, the court ordered a third trial on the issue of damages.
 
 
 10
 At this juncture, the case was assigned to a different judge and set for trial on June 3, 1986. Webber again relied upon essentially the same evidence as had been presented in the two previous trials. The jury returned a verdict for Webber in the amount of $15,000. Post-trial motions on behalf of both Webber and Massey-Ferguson were denied and a judgment order entered on June 4, 1986.
 
 
 11
 On June 16, 1986, Webber filed a notice of appeal. On July 14, 1986, the presiding judge at the first two trials entered a written order formalizing the grant of summary judgment to Massey-Ferguson Credit which had been announced in April, 1985. This appeal and cross-appeal followed.
 
 II.
 
 12
 This case was first before this Court in April of 1987. At that time we questioned whether appellate jurisdiction was proper in light of Webber's apparently premature notice of appeal. Concluding that the notice filed before the final order of July 14, 1986, was invalid, we dismissed the appeal for want of jurisdiction. We subsequently reconsidered that determination in connection with Webber's petition for rehearing and concluded that the appeal filed after the announcement of summary judgment in favor of Massey-Ferguson Credit, but before the formal entry of a written order was adequate under Fed.R.App.P. 4(a)(2) to convey appellate jurisdiction.[3] We, therefore, granted the petition for rehearing and now turn to the merits of the appeal.
 
 
 13
 The focus in this appeal is on the related issues of liability and damages. The cross-appellant, Massey-Ferguson, argues that the evidence presented below failed to establish either a breach of warranty or an appropriate measure of damages. Appellant Webber contends that her damages were thoroughly established at both the first and second trials and that the district court erred in setting aside the award in each trial.[4] Webber also argues that both trial judges improperly denied her an opportunity to seek a broader recovery under the revocation of acceptance provision of the North Carolina Commercial Code Sec. 25-2-608.[5]
 
 
 14
 The majority of the issues in this appeal are amenable to a prompt disposition. As a threshold matter, we reject Massey-Ferguson's suggestion that the evidence below was insufficient to establish a breach of its express warranty that the combine sold to Webber would be "free of defects in material or workmanship." We recognize that under North Carolina law, a mere malfunction does not prove the existence of defective material or workmanship,E.g. Cockerham v. Ward, 44 N.C.App. 615, 267 S.E.2d 651, cert. denied, 300 N.C. 195, 269 N.E.2d 622 (1980). In this instance, however, the evidence demonstrated far more than a simple isolated breakdown. Monroe Sherrill, an experienced mechanic employed by the selling dealer, Southridge Tractor, testified that the combine would not operate satisfactorily despite his numerous efforts at repair. He also testified that the only additional remedy offered by Massey-Ferguson's area representative involved the expensive adjustment of a non-warranted part that Sherrill believed to be unrelated to the combine's malfunction. From the evidence presented, the jury could have reasonably and soundly inferred that the combine's inadequate performance was caused by an inherent defect in its manufacture. We, therefore, see no error in the district court's denial of Massey-Ferguson's motion for jnov on the issue of liability.[6]
 
 
 15
 We likewise see no error in the district court's failure to submit Webber's assertion that she revoked her acceptance of the combine pursuant to the North Carolina Uniform Commercial Code to the jury. Although North Carolina law permits an aggrieved buyer to pursue recovery simultaneously for breach of warranty and revocation of acceptance, our review of the record convinces us that Webber failed to assert the latter theory in a proper and timely fashion.
 
 
 16
 In neither her counterclaim against Massey-Ferguson Credit nor her third-party complaint filed against Massey-Ferguson did Webber specifically allege that she had revoked her acceptance of the combine. The issue was apparently raised and rejected in connection with Massey-Ferguson Credit's successful motion for summary judgment--a ruling that Webber has not appealed. We find nothing, however, in the record of the first trial to indicate that Webber ever attempted to assert the theory of revocation of acceptance against Massey-Ferguson.
 
 
 17
 Not until the third trial does the record reveal a belated effort by Webber to claim a revocation of acceptance. At that juncture, however, the allegation represented an ill-conceived attempt to reopen the entire question of liability. We conclude that the district court's rejection of what must be construed as a motion for a new trial on all issues was well within the bounds of judicial discretion. Virginian Railway Co. v. Armentrout, 166 F.2d 400 (4th Cir.1948). Simply stated, Webber was not denied an opportunity to claim revocation of acceptance. Rather, the claim was forfeited through her own miscalculation.
 
 III.
 
 18
 The remaining issues in this appeal and cross-appeal are intertwined with the question of appropriate damages for Massey-Ferguson's breach of warranty. It is Webber's central contention on appeal that the district court erred in setting aside the first two damage awards. Not surprisingly, Massey-Ferguson contends that there was no competent evidence to support any finding of damage but that, in any event, it was within the district court's discretion to twice order new trials on that issue. Although we are mindful that the district court normally enjoys broad discretion when deciding to set aside a jury verdict as excessive, Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir.1941), we are persuaded in this instance that the verdict of the first jury to hear this matter must be reinstated.
 
 
 19
 Clearly, it is within the trial court's authority to set aside successive verdicts as excessive or against the weight of the evidence. However, "it is equally clear that it is a power to be exercised only in the most exceptional cases. When two juries have reached substantially the same result the possibility of a miscarriage of justice is very slight." 11 C. Wright & A. Miller, Federal Practice and Procedure Civil Sec. 2803 (1973) discussing Frank v. Atlantic Greyhound Corp., 177 F.Supp. 922 (D.D.C.1959) and the additional cases cited therein. We see no exceptional circumstances in the present case that would require multiple trials on the issue of damages.
 
 
 20
 Under North Carolina law, the measure of damages for breach of warranty is the difference between the value of the goods accepted and the value they would have had if they had been as warranted. Stutts v. Green Ford, Inc., 47 N.C.App. 503, 267 S.E.2d 919 (1980). In all three trials, Webber sought to show that while a combine conforming to the warranty would have been worth the approximately $35,000 that she agreed to pay, the equipment delivered to her had only minimal value. Monroe Sherrill testified at all three trials that a combine that would not perform properly was worth nothing. Wayne Yarboro, a neighboring farmer, testified at the first and third trials that the defective machine had only a salvage value of approximately $5,000. Both trial judges allowed that testimony as competent evidence on the issue of the combine's value.
 
 
 21
 After the first trial, the court found that "the jury was left to speculate as to what the combine was worth at the time of acceptance." After the second trial, the court held that "it was contrary to common sense to hold that a new combine ... had no value." We find both conclusions questionable.
 
 
 22
 Clearly, the jury was not merely speculating blindly at the first trial with regard to the value of the defective combine. The testimony of Sherrill and Yarboro, if credited, provided a substantial basis for a reasonable jury to assess damages. The evidence offered at all three trials was certainly sufficient to defeat Massey-Ferguson's jnov motion on the damages issue. Moreover, the similar verdict at the second trial strongly refutes any suggestion that the damage award was a product of passion or prejudice. See Frank, supra at 924.
 
 
 23
 Similarly, we do not find "common sense" offended by a jury's determination that a defective piece of specialized equipment is essentially worthless. A machine manufactured and purchased solely for use in commercial farming has little more than scrap value if it cannot be operated economically. We have no doubt that a combine that wastes twenty percent of the harvested crop falls within that category.
 
 
 24
 We recognize, of course, that a sizable piece of machinery, even if totally inoperable, must have at least a minimal salvage value. Webber conceded as much in the first and third trials when she elicited testimony from Wayne Yarboro on that issue. It was apparently the absence of testimony on possible salvage at the second trial that led to the $5,000 variation between the first and second verdicts. Although the trial court might soundly have imposed a remittitur to remedy the plaintiff's evidentiary omission on this point, we conclude that it was improper to set aside the entire award. Two juries having heard the same evidence had reached almost identical conclusions. Substantial justice had been done. Some things must come to an end. Clerk v. Udall, 2 Salk. 649, 91 Eng.Rep. 552 (1702).
 
 
 25
 Ordinarily, the proper remedy at this juncture would be to reverse the court's order requiring a second new trial and remand the case for a reinstatement of the second jury verdict. We need not, however, ignore the undisputed fact, conceded anew by the parties at oral argument, that the combine sold to Webber did have a salvage value near that figure estimated by Yarboro. To restore the second verdict would give Webber an undeserved windfall in the amount of $5,000. We therefore conclude that the judicial policy disfavoring multiple retrials absent "exceptional" circumstances can best be applied in this instance by reinstating the first jury verdict below.
 
 V.
 
 26
 For the foregoing reasons, the district court's June 5, 1985, order setting aside the award of damages and granting a new trial is reversed and this matter remanded to the district court with instructions that the verdict in favor of Wanda Webber in the amount of $30,000 be reinstated. On all other contentions asserted by the appellant and cross-appellant, the determinations of the district court are affirmed.
 
 
 27
 REVERSED in part, AFFIRMED in part; and REMANDED.
 
 
 28
 DONALD RUSSELL, Circuit Judge, dissenting.
 
 
 29
 I would begin by pointing out what I think is an error in the procedure followed by the panel. The notice of appeal filed by the defendant and third party plaintiff Webber was from "the final judgment entered in this action on the 4th day of June, 1986"; it was not an appeal from the grant of a new trial after either the first or second trial. Yet the reversal by us applies only to the grant of a new trial after the first trial herein. If we are to adhere to the rule adopted by this Court less than six months ago in Foster v. Tandy Corp., 828 F.2d 1052, 1059 (4th Cir.1987), reversal herein on the ground assigned is clearly inappropriate. In Foster, the notice of appeal is practically a duplicate of that in this case.[1] In that case, the appellant sought, among other claims, to challenge the propriety of the district court's grant of a directed verdict on his claim of breach of contract. We dismissed this part of the appeal, stating (828 F.2d at 1059):
 
 
 30
 As a final point, Foster attempts in his brief to challenge the action of the district court in granting the motion of Tandy for a directed verdict on the claim that Tandy breached its contract and misrepresented its status as an equal opportunity employer. Dispositive to this claim is the fact that the notice of appeal filed by Foster addressed only the granting of the judgment n.o.v. motion, and did not set out as a basis for appeal the granting of Tandy's motion for a directed verdict. "Since the jurisdiction of the appellate court is determined by the timeliness and specific terms of the notice, it cannot be modified to cover a judgment not included by any reasonable interpretation."
 
 
 31
 That language of Foster absolutely covers this case and should dispose of any appeal from the grants of new trial after the first and second verdict. A decision of the district court is compelled by Foster unless we are to depart from our rule that a decision in a prior precedent by this court which decided the legal issue involved is to be followed and may only be disregarded after an en banc court. I would, therefore, dismiss any appeal from the grant by the district court of a new trial after either the first or second trial.
 
 
 32
 But, if this court is to disregard the procedural bar which I perceive bars review of the district court's denial of a new trial after the first and second trials herein and to review as it does those denials on their merits, I would dissent from the conclusions reached on that question.
 
 
 33
 There are matters on the substantive issue of liability as stated in the majority opinion with respect to which I differ with the majority. My point of difference with the majority opinion on that issue relates to the propriety of the district court's order granting a new trial after the first trial in this case. My reasons for this difference of opinion may be quickly summarized. Wanda Webber, the counterclaim plaintiff, purchased the combine, which is the subject of this action, on September 25, 1982. The actual cash price was $35,000. She paid in cash all but $30,000 of the purchase price and financed the balance. She used the combine to harvest three separate crops. Her neighbor and chief outside witness, Wayne Yarboro, borrowed the combine from Webber on several occasions and used it to harvest his own crops. Webber did complain on several occasions about the operation of the combine to the dealer from whom she had purchased the machine. The dealer sent an expert mechanic who made some adjustments but whose general testimony was that the machine was operating satisfactorily. This expert had at the time of his testimony left the employ of the dealer and was, therefore, a disinterested witness. It was only when Webber began to default on her installment payments and the finance company began action in September, 1984, for the balance due on her financed paper that Webber asserted by way of a counterclaim her action for breach of warranty of the combine. I mention these facts because they have a direct bearing on the issue of damages allowed for the breach in the first trial by the jury, which the majority sustains. While I find the evidence of a breach of warranty meager, I accept that it was probably sufficient for jury submission, but I differ sharply with the majority on the sufficiency of the evidence on damages.
 
 
 34
 Under North Carolina law, which is applicable here, the measure of damages for a manufacturer's breach of warranty is the difference at the time and place of acceptance between the market value of the goods accepted and the market value they would have had if they had been as warranted, and the burden of proving the difference in value rests upon the purchaser. Stutts v. Green Ford, Inc., 47 N.C.App. 503, 513, 267 S.E.2d 919, 926 (1980). The purchaser (Webber) in this case offered one witness at both the first and second trials on this issue. This witness was Wayne Yarboro, who described himself as a "full-time farmer" with ten years' experience as such. Yarboro and the purchaser were "neighbors" and "good friends," who swapped "chores pack [sic] and forth." He used a Massey combine and it had "done an excellent job for [him]." Sometime in the middle of the summer of 1983 he borrowed the combine Webber had purchased and used it for harvesting his fescue crop. He said he thought the combine was "blowing out too many seeds," and was not operating "to full efficiency." However, he did not discontinue using the combine but completed his harvesting with the combine. Later, Webber had him to use the combine in harvesting her wheat. He testified that the combine operated somewhat slower than it should and there was "an excessive amount of loss of grain." He then gave an opinion, based "upon [his] knowledge and experience as a full-time farmer, and based upon knowledge [he] may have of the farm implement business," as to the value of the combine at time of acceptance, had it been "in true working order," on its value at time of delivery. He fixed these two values as $35,000 and $5,000 at the first trial, and at the second trial he testified the value of the machine to Webber was "nothing." Yarboro arrived at his estimates of value, as he testified, because "[f]or what she [the plaintiff-Webber] bought it to do with, it was worth nothing to her, because it didn't do what it was supposed to do." The district court told the witness that the issue was "the actual reasonable market value" of the machine at delivery and not necessarily what it was worth to Webber. To this instruction, the witness responded doggedly, "[t]o her it was worth nothing." Such was the basis for the testimony of Webber's only witness on the critical issue of measure of damages at the second trial.
 
 
 35
 The district judge set aside the verdicts in both trials, finding that the testimony of the witness on measure of damages was insufficient to sustain the verdict. In reaching his decision, he found the testimony of Yarboro on value at both trials to be incredible. And this conclusion is, I suggest, reasonable. The machine was accepted by Webber, kept for two years, and used by her to harvest three crops. Her value witness, who testified that the machine had no value, actually borrowed the machine and used it to harvest his own crop. I agree with the district judge that it is unbelievable to assume that such a machine had no value or mere salvageable value. As a matter of fact, Yarboro never qualified as an expert on the value of machines such as that involved here. He certainly did not show himself qualified "by knowledge, skill, experience, training or education" to give an opinion on the market value of the machine in this case; yet that is precisely the qualification for an expert witness required under Rule 702, Federal Rules of Evidence. So far as the record shows, he had never himself bought such a machine, traded one or dealt in any way with the value of the machine. In fact, his value opinion was not based on market value, as the rule requires, but was based on what he thought the machine was worth to Webber. An opinion based on a fallacious assumption is actually entitled to no weight and this is just what the district judge gave Yarboro's opinion, a decision he was plainly entitled to make. Yet the jury in both trials accepted completely the valuations given by Yarboro, valuations which did not conform to the standards for such valuations established by North Carolina law, returning a verdict in the first trial of $30,000 on the basis that the machine had no value other than as salvage and in the second of $35,000, the full purchase price of the machine, allowing nothing for its marketable value at time of acceptance.
 
 
 36
 It is obvious that the majority assumes that the measure of damages for breach of contract here is the difference in cost between actual cost and the salvage value of the machine at time of acceptance, or what it was worth to Mrs. Webber. The issue under North Carolina law is the market value of the machine when Mrs. Webber accepted it. That this is so is clear from the language of the North Carolina decisions and was stated by the district judge when the witness Yarboro was testifying. Despite this, Mrs. Webber persisted in declaring the value to be, in one case, the value of the machine to her and in the other its salvageable value and not its market value for comparison with the value if the machine had been as warranted. The district court refused to sustain a verdict for damages in both cases based on a standard plainly contrary to controlling law.
 
 
 37
 If there was ever a case where it was proper for the district judge to grant new trials, this was such a one. There was actually no credible testimony offered by Webber at either trial of the market value of the machine in question when it was accepted by her. Absent such testimony, it was within the unquestionable authority of the district judge to grant a new trial; in fact, plain justice demanded such action. See Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352-53 (4th Cir.1941). In that case the Court said:
 
 
 38
 On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.
 
 
 39
 This case has consistently been followed by us. Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-92 (4th Cir.1980). The majority, however, held that
 
 
 40
 Ordinarily, the proper remedy at this juncture would be to reverse the court's order requiring a second new trial and remand the case for a reinstatement of the second jury verdict. We need not, however, ignore the undisputed fact, conceded anew by the parties at oral argument, that the combine sold to Webber did have a salvage value near that figure estimated by Yarboro. To restore the second verdict would give Webber an undeserved windfall in the amount of $5,000. We therefore conclude that the judicial policy disfavoring multiple retrials absent "exceptional" circumstances can best be applied in this instance by reinstating the first jury verdict below.
 
 
 41
 For the reasons stated, I would affirm the district judge's grant of a new trial after both the first and second verdict herein and I dissent from the holding in the majority opinion that such grant was erroneous.
 
 
 
 [1]
 Massey-Ferguson Credit also brought an ancillary proceeding seeking immediate possession of the equipment which was subject to a security interest. Webber waived her right to a hearing and the Credit Corporation took possession of the equipment in October of 1984
 
 
 [2]
 The district court's delay in entering its written order contributed to a portion of the unfortunate confusion that has surrounded this case
 
 
 [3]
 Fed.R.App.P. 4(a)(2) provides that:
 (2) Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof.
 
 
 [4]
 Contrary to the view expressed in the dissenting opinion, we can discern absolutely no conflict between our decision today and this Court's opinion in Foster v. Tandy Corp., 828 F.2d 1052 (4th Cir.1987). In Foster, supra, the appellant noted an appeal from a "judgment and order of ... [the district court] dated October 29, 1987." It is well established that an appeal may be filed from a "part" of a judgment or order. Fed.R.App.P. 3(c). Moreover, when an appellant chooses to designate a specific part of the judgment in a notice of appeal, the jurisdiction of the appellate court is limited to those issues on which a request for review can be reasonably inferred. 9 Moore's Federal Practice, p 203.18. The panel in Foster simply decided that when the notice of appeal was examined in conjunction with the specific lower court order to which it referred, appellant had sought review only with regard to the granting of judgment notwithstanding the verdict. Accordingly, this Court was left without jurisdiction to consider appellant's belated objections to a partial directed verdict
 In the instant case, Webber sought to challenge the awarding of new trials. Although reviewable orders granting or denying motions for new trials are not separately appealable, appellate review may be obtained only by filing a notice of appeal from the entry of final judgment. 11 Wright and Miller, Federal Practice and Procedure, Sec. 2818. Webber duly noted her appeal from "final judgment" and thus presented her contention to this Court in the only proper fashion. The procedural default addressed in Foster has no relevance in this context.
 
 
 [5]
 North Carolina Commercial Code Sec. 25-2-608 provides that:
 (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
 (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
 (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
 (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them. (1965, c. 700, s. 1.)
 
 
 [6]
 Although we are not persuaded by Massey-Ferguson's argument or cross-appeal, the position asserted is far from frivolous. Accordingly, appellant Webber's motion for sanctions against Massey-Ferguson which accompanied this appeal is denied
 
 
 [1]
 The majority opinion in its note 4 would distinguish Foster from this case because the order of appeal was from "a judgment and order of ... (the district court) dated October 29, 1987," and therefore on appeal was solely from that order and did not involve any other error in the case, whereas in this case Webber "duly noted her appeal from 'final judgment.' " The "judgment and order" from which the appeal was taken in Foster was the denial of "judgment n.o.v."; that in Webber was "from the final judgment entered in this action on the 4th of June, 1986." I perceive no difference in the two notices: Both put in issue the final judgment, one in the form of a denial of a judgment n.o.v. and the other a final judgment. If anything, Foster 's notice was broader in its application than the notice in this case, which confined its application to the final judgment "of June 4, 1986," a judgment that did not involve the earlier grants of new trials